## J. W. Pennington *v.* Wm. Seal.

1. Trustee—When Responsible for Trust Fund.—If a trustee, whether his duties are defined by the law, or by instructions given by the individual who may appoint him, exceeds his authority, or disobeys the instructions given him, he acts at his peril and assumes responsibility for the consequences.

2. Voluntary Conveyances.—The creditor who may set aside a voluntary conveyance, must be such at the date of the conveyance; as to him, the law presumes that it is void, and the grantee or donee must establish the circumstances which repel the presumption of fraudulent intent. Kolheim v. Wilson, 46 Miss., 346.

3. Same—Who are Creditors?—The general rule is, that a liberal construction must be put upon the statute in allowing the character of creditor. Hence, a person liable contingently as an accommodation endorsor, before the dishonor of a note, is a creditor. Hausmet v. Dundass, 4 Barr R., 178. So also a surety of the principal obligor and of his co-sureties, from the time the obligation is entered into. Williams *et al*, v. Banks, 11 Md. R., 242. A trustee becomes a debtor from the time he receives the trust funds.

4. Homestead Exemptions.—The exemption of the homestead is dependent upon the facts, that the debtor claimant is the head of a family and resides upon the premises. He is entitled to continue his occupancy, notwithstanding there may be judgment creditors. It is lost by abandonment; nor does it matter under the statute of 1857. and the amendment of 1865, that the abandonment of the occupancy, was to a purchaser for a valuable consideration. Whitworth v. Lyons, 39 Miss., 467. Nor does it matter to the creditor by what sort of a title the debtor occupies. The increased exemption of the statute of 1865, cannot be allowed to pre-existing creditors. Lessley v. Phipps, (MS. opinion.)

Appeal from the chancery court of Marshall county. Hon. DeWitt Stearns, Chancellor.

The opinion of the court contains a sufficient statement of the case.

*Walter & Scruggs* and *James H. Watson,* for appellant:

1. There is no doubt that the voluntary conveyance made the 21st of March, 1868, by Wm. and Nancy Seal to their children, Thomas J. and Ellen G., was void as to prior creditors. Young v. White, 25 Miss., 149; Bogard v. Gordley, 4 S. & M., 310; Swayze v. Doe, 13 ib., 323; Vertner *et al.* v. Humphries, 14 ib., 131; Kerr on Fraud, 199.

After William Seal had given 240 acres, on which was situated his dwelling house, to Thomas J. and Ellen G., although

he continued to live with them, he could have held 240 acres more, by settling upon it with his wife; and then after making a homestead of this second tract of 240 acres, he might have conveyed it to other children, and so on *ad infinitum* until the whole 640 acres were exhausted. See Trotter v. Dobbs, 38 Miss., 198; Mosely v. Anderson, 40 Miss., 49. Where the " head of the family " is the owner of two or three times as much land as the law allows him for a homestead, and sells or gives away that portion thereof which would have been legally exempt had he chosen to keep it for a homestead, but at the same time retains the title to more than the amount allowed by law, in that event, the property so disposed of, is placed upon the same footing as property not exempt. Nor can it be replied that William Seal did not pursue the course we have supposed; but that if he had done so, the rights of his creditors would have at once revived against the property previously conveyed in his deed of gift. Upon the acquisition of a new homestead the right to the former is abandoned, as if the debtor removes from one to the other and is the owner of both. Thoms v. Thoms, 45 Miss., 275.

The conveyance was valid as between the parties, and the grantor cannot attack it in any way. It can only be set aside by creditors. Ellis v. McBride, 27 Miss., 145; Snodgrass v. Andrews, 30 Miss., 472; 31 Miss., 290; Kerr on Fraud, 198, note 1. The voluntary conveyance was, therefore, as much an abandonment of the homestead as a sale for value would have been. Whitworth v. Lyons, 39 Miss., 468.

By the transaction, William Seal claims the right to two homesteads. By the conveyance, he abandoned his former homestead, and was at liberty at any time to take possession of the remaining 240 acres as a homestead, thus creating a fraud against creditors. He seeks to place 240 acres beyond the reach of creditors by voluntarily conveying it, on the ground that he has a right to *convey* his homestead, and protect another 240 acres from the claims of creditors, on the

ground that he has a right to *hold* that much land as exempt under the law. The transaction is certainly in fraud of creditors, and therefore void. Whitworth v. Lyons, 39 Miss., 467. The amendments of 1865 and 1867, to the exemption law of 1857, will admit of no construction that upholds this transaction. It was never intended by the legislature that the head of a family, owing debts, should dispose of his homestead and settle on another part of his land, of equal amount, and claim that, in fraud of creditors, as his homestead. So far as creditors and their rights are concerned, the law remained the same as in 1857.

· If William Seal had sold the homestead for $5,000.00, and had given the entire proceeds to Thomas J. and Ellen G., counsel would probably agree that the fund would be liable to the payment of pre-existing creditors of William Seal, yet they would gravely tell us, and insist on it, that William Seal did have the right to give the homestead itself away to whomsoever he chose. This being so, could not his donees, if their title is a valid one, sell the homestead and hold the proceeds?

Though based upon a valuable consideration, yet there was lacking in the conveyance that *bona fides* which was necessary to render it valid as to the grantor's creditors. Kerr on Fraud, 199.

2. Was the act of 1865, increasing the homestead exemption from " 160 acres, not to be worth more than $1,500.00," to " 240 acres, regardless of value," valid and binding as to pre-existing creditors; this question has been held in Stephenson v. Osborne, 41 Miss., 119, in the affirmative, but we insist, with due deference to the opinion of the court, that the case is not binding authority upon this court, nor is it a precedent which ought to be followed. The law was certainly unconstitutional, as impairing the obligation of contracts.

The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made; these are necessarily referred to,

in all contracts, and form a part of them as the measure of the obligation to perform them by the one party and the right acquired by the other.   McCracken v. Hayward, 2 How. (U. S.), 608, *et seq.*   If any subsequent law affects to diminish the duty or impair the right it necessarily bears on the obligation of the contract in favor of one party to the injury of the other; hence any law which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the constitution.   Ib.

The laws applicable to the contract between William Seal and complainant, formed a material part of it, and any alteration of the law, to the detriment of either party, was clearly invalid.   Planters' Bank v. Sharp, 6 How. (U. S.), 327; Von Hoffman v. City of Quincy, 4 Wall, 552; White v. Hart, 13 ib., 653; 41 Miss., 130,131; Gunn v. Barry, decided by the supreme court of the United States, December term, 1872.

*Featherston, Harris & Watson,* for appellee:

1. There was a lien on the land conveyed by Wm. Seal in 1868.   Consequently he had the undisputed right to make the conveyance, especially as he applied the proceeds to the payment of a debt, to the exclusion of the debt due complainant.   A debtor may certainly prefer, in good faith, one creditor to another, and may pay off one to the exclusion of another.   Ingram v. Grigg, 13 S. & M., 22; Hunt v. Knox, 34 Miss., 655; Mangum v. Finacure, 38 ib., 354; Swisher v. Fitch & Brown, 1 S. & M., 541; Farmers' Bank v. Douglass, 11 ib., 469.

William Seal had a right to locate his homestead on any tract of land that he owned, and to dispose of it as he pleased.   The claim of the appellant against him had not been reduced to a judgment until nearly four years after the alleged voluntary conveyance, and therefore constituted no lien.   A sale or gift made before a lien attaches, vests

a good title in the vendee or vendor. Stephenson v. Mangum, 27 Miss., 481; Dozier v. Lewis, ib., 679.

The doctrine of voluntary and fraudulent conveyances does not apply to the case at bar. There were no debts in existence which were notice to purchasers. William Seal's homestead, under the act of 1865, was placed beyond the reach of his creditors, and ceased to be a matter in which they had any interest. Smith v. Allen, 39 Miss., 469; 15 Ala., 826; 2 B. Mon., 19; Conklin v. Foster, 57 Ills., 257; 11 Ala., 164; Parker v. Dean, 45 Miss., 408. As to that property, the debtor would be considered as without creditors. Smith v. Allen, *supra.*

If creditors are injured by a conveyance of property, it must be by a conveyance of such property as they could subject to the payment of their debts. The current of recent decisions in other States establish the doctrine that the alienee of the exemptionist acquires a good title. Parker v. Dean, 45 Miss., 423. The sale and surrender, by the debtor, of the homestead, to a junior creditor, does not subject the land to levy and sale under an older judgment. McDonald v. Crandall, 43 Ills., 231. A mortgage of the homestead is not a forfeiture of the rights of the exemptionist. Moore v. Dixon, 35 Ill., 208; Waite v. Houle, 19 Wisc., 472; Clark v. Shannon, 1 Nev., 568. The rights of the debtor in his homestead cannot be forfeited by any acts of his, unless the law under which he claims declares or provides that such acts shall operate as a forfeiture. Hawthorn v. Smith, 3 Nev., 182; Moseley v. Anderson, 40 Miss., 54, 55.

2. The claim which complainant seeks to enforce, arose after the passage of the act of 1865. If that act is invalid as to pre-existing debts, it is certainly binding on those subsequent. But is the act of 1865 unconstitutional even as to debts of this kind existing before its passage? This is not an open question in this State. It is *res adjudicata.* This court, in Stephenson v. Osborne, decided the law as valid and constitutional in every respect, the question having

been raised and argued with great ability; and the judgment of that court must prevail.

The law of 1865 affected the remedy, and not the obligation of the contract. There is a marked distinction between the rights and remedies, between the legal obligation of a contract, and the proceeding appointed by law for its enforcement. Whatever pertains to the validity, construction, effect and discharge of the contract, is governed by the law in force at the time it was made, and the law enters into and forms a part of it. The remedy is the act of the law-making power, providing a mode of redress for the injury occasioned by the breach of the contract. The remedy does not necessarily constitute a part of the obligation of a contract, and is within the control of the legislature. Stephenson v. Osborne, 41 Miss., 119; McDaniel v. Morrison, 30 ib., 213; Curtis v. Whitney, 13 Wall, 68; Bronson v. McKenzie, 1 How. (U. S.), 315; Sturgis v. Crowningshield. 4 Wheat., 200; Mason v. Waite, 12 ib., 370; Brown v. Dillahuntry, 4 S. & M., 713; Jackson v. Lampshire, 3 Pet., 290; Tarpley v. Hamer, 9 S. & M.

An act of the legislature will never be decided unconstitutional unless it is palpably so. In cases of doubt, the act will be sustained. 6 How., 625; Newsom v. Cocke, 44 Miss., 362; Thompson v. Grand Gulf R. R., 3 Wall., 240; Marshall v. Grimes, 41 Miss., 27.

SIMRALL, J., delivered the opinion of the court:

In proceedings had in the chancery court to settle the accounts final of William Seal, guardian of the plaintiff in error, Pennington, a decree was rendered in favor of Pennington, for $2,316.13. A writ of *fieri facias*, issued upon the decree, was levied upon the lands described in the pleadings. After the levy, Pennington brought his bill in chancery, to vacate and set aside a conveyance, made by William Seal, to his son and daughter, as obscuring the title, so that the property might bring its value when sold. The date of the decree was September 12, 1857. The complainant alleges

that the liability of the guardian, for which the decree passed, was incurred prior to 1863, and that on the 24th of March, 1868, William Seal, the debtor, who was then, and still is insolvent, conveyed to his son and daughter, for the consideration of natural love and affection, the northwest quarter of section 24, township 3, range 3, west, and west half of section 13, township 3, range 3, west.

William Seal was appointed guardian in 1857. The testimony shows, that money, of the ward, came to the hands of the guardian, and before the late war was loaned out to persons then deemed by him to be entirely solvent. These loans, made prior to 1863, indeed prior to the war, were without the sanction and approval of the probate court. We are satisfied that the guardian, in this matter, was actuated by good faith and pure motives, and but for the calamities of the war, the borrowers in all probability would have been able to return the money. If a trustee, whether his duties are defined by the law or by instructions given by an individual who may appoint him, is under a duty to follow the directions of the law, or the instructions given by the person who appoints him; and if he exceeds his authority, or disobeys the rules prescribed to him, he acts at his peril, and undertakes responsibility for the consequences. The law required that Pennington should consult the probate court and obtain its sanction and approval of the loan of the ward's money. If he made loans without such sanction and authority, he assumed responsibility for the outcome. If the fund was lost by insolvency, he must make it good. Such is his responsibility, and such manifestly was the theory of law upon which the chancery court proceeded in making up its decree.

The creditor who may set aside a voluntary conveyance, must be such at the date of the conveyance. As to him it is void in law. That is to say, the law assumes or presumes that it is void, and the grantee or donee must establish the circumstances which repel the presumption of fraudulent intent. The conveyance is already under condemnation,

until the grantee shall prove facts which will give it validity; as that the donee was in prosperous circumstances, and retained ample and abundant means to discharge all of his pecuniary obligations, the gift being reasonable, and apparently in no serious degree endangering a putting in hazard existing creditors.

This principle was thoroughly examined on authority, and distinctly laid down in Kolheimer v. Wilson, 46 Miss. Rep., 346, which has been subsequently followed. It is just and proper, and subserves the interests and exigencies of families. It allows settlements, and advancements, for the wife or children, where the circumstances of the husband or father will admit of it; where the gift or advancement in the circumstances is reasonable, and ample property is retained to meet all the obligations and liabilities of the grantor or donor.

But when the conveyance of March, 1868, was made by Wm. Seal, he was embarrassed and insolvent, and could not. extend bounties to his children, at the expense of his creditors.

Was Pennington a creditor of Wm. Seal at the date of the conveyance? From a collection of cases, in 1 American Leading Cases, 37, the principle established by them, under the statute of 13 Elizabeth, ch. 5, and similar American statutes, is that a liberal construction must be put upon them, in allowing the character of creditor. Hence, a person, liable contingently, as an accommodation endorser, before the dishonor of the note, was a creditor. Hammet v. Dundass, 4 Barr., 178. A surety is a creditor of the principal obligor, and of his co-sureties from the time the obligation is entered into. Williams et al. v. Banks, 11 Md. Rep., 242; 1 Am. Law Cases (supra), 10 Vesey, 360. A warrentor, if at the date of the deed a paramount title was outstanding, is from the date of the conveyance, a debtor to the warrantee. Gannard v. Eslara, 20 Ala. Rep., 740. A trustee becomes a debtor from the time he receives the trust funds. McLemore v. Nuckolls, 37 Ala., 674. So a covenant in a guaranty of the

collectibility of a judgment, dated 6th of November, 1817, constituted the covenantor a debtor, as against the conveyance made 16th April, 1818. See also Bump on Fraudulent Conveyances, 488, 489, 490.

We are of opinion, under the interpretation placed upon the statute of 13 Elizabeth, and similar and identical American statutes, including our own, (Code, 1857, pp. 358, 359,) that William Seal was the debtor of Pennington long anterior to the conveyance made to the son and daughter.

The answer of William Seal, sets up that only half of section 13 (the west half), and four acres in the east corner of the northwest qr. of sec. 24, were conveyed to his son, Thos. J,, and his daughter, Ellen G. Seal. He avers that the west half of section 13, included his homestead of 240 acres, the improvements being mostly in the southwest quarter, and 80 acres on the south side of the northwest quarter. That his intent was only to convey the 240 acres, which constituted his homestead, but by mistake of himself or the draftsman of the deed, the northwest quarter of section 13 was included, when only 80 acres off of the south side of that quarter was to have been included. That so soon as the mistake was discovered, being desirous of disposing of his lands, and correcting the mistake, he sold and conveyed, in July 1868, the 80 acres to his son, for $800.00, and in the deed referred to the mistake in the former one to his son and daughter. That he still lives upon and occupies the premises as his homestead, and claims if the conveyance to his son and daughter should be set aside, he is still entitled to the homestead. The description in the deed from Wm. Seal to his son and daughter, filed with the answer, corresponds with the description therein given.

The answer of Thomas J. and Ellen G. Seal, avers that the conveyance to them was in good faith, was only intended to embrace the two hundred and forty acres, the homestead of their father, but that after it was ascertained that it embraced more than that, the purchase was made in July,

of eighty acres off of the north end of the N. W. quarter of sec. 13, for the consideration of $800.00.

In his deposition, Wm. Seal, states that he sold, several years ago, the S. E. quarter of sec. 13, to Thos. B. Gatewood. The deed is in the record. That, with the agreement of counsel in respect to it, makes that sale valid, as against Pennington's decree. The depositions prove that the deed to Thomas and Ellen Seal, contains more land than was intended to be conveyed.

The re-argument of this case, was, awarded by the court, *sua sponte*, to re-examine the question of whether, William Seal, could vindicate a claim to the homestead exemption, in lands which he had conveyed for a moral consideration, love and affection, to his son and daughter.

The exemption of the homestead is dependant upon the facts that the debtor claimant is the head of a family, and resides upon the premises. He is entitled to continue the occupancy of his home in spite of his judgment creditor. The conveyance by the father, Wm. Seal, to his son and daughter, being voluntary, was *void*, as against Pennington his creditor.

The property, so far as liability to existing creditors was concerned, was William Seals', with the same completeness, and effect, as though the conveyance had never been made. Seal stood before his creditor as owner of the property, and might assert his right to the homestead, with the same force as though he had not made the fraudulent conveyance. It is averred in the pleadings, and proved that he and his wife, continued to reside upon the premises as their home.

The occupancy continued, notwithstanding, the deed to his children. The homestead exemption is dependent upon the condition of occupancy, and is lost by the abandonment. Nor does it matter under the statute of 1857, and the amendment of 1865, that the abandonment of the possession and occupancy, was to a purchaser for a valuable consideration. Whitworth v. Lyons, 39 Miss. Rep., 467.

Nor does it matter, so far as the creditor is concerned, by

what sort of title the debtor occupies. By attempting the sale, the creditor affirms that his debtor has a saleable interest. The law means, that, that interest should not be taken away, and the debtor disturbed in his possession by sale under judicial process.

Seal met all the conditions required by statute to perfect his right to the exemption.

In Phipps v. Lessley, (decided at this term,) we held that the increased exemption, by the statute of 1865, could not be allowed to pre-existing creditors. The right of Wm. Seal should then be measured by the statute of 1857.

Subject to the homestead exemption, all the lands embraced in the voluntary conveyance, made by Wm. Seal to his son and daughter, of March, 1868, is liable to Pennington's decree, unless the mistake made by Wm. Seal in putting into that deed eighty acres more than was intended, and which mistake was rectified, or attempted to be rectified by the subsequent sale of the eighty acres, relieves that much from such liability.

This point in the case is not free from embarrassment. It is true as urged by counsel, that the voluntary conveyance to the son and daughter, passed the legal title to all the land included in it, to the son and daughter.

But it is conceded by the parties to that deed, that more land was in the deed than was intended. The mode of rectification was that the son should become the purchaser of the excess, at its fair value, and accept a deed from his father, explanatory of the transaction. The daughter acqiesced in the arrangement.

Treating it as a mistake, and that the parties were willing to correct it, and adopted a mode which seems to have been satisfactory to all; it is not unjust or unreasonable that the son, who paid a valuable consideration, should be permitted to enjoy the privilege and protection of a *bona fide* purchaser.

If the mode of adjustment had been, that the son and daughter should re-convey the excess to the father, and he should then sell and convey to his son Thomas, and had been

so consummated, it would be difficult to put any other construction upon it, than that Thomas was a *bona fide* purchaser if there were no intentional fraud, or fraud in fact.

A court of equity which looks more at the substance, than the forms of dealings, ought to give effect to the arrangement actually made, if it was fair and free from fraud.

We are brought to the conclusion that William Seal, ought to be allowed his exemption, according to the statute of 1857. That the eighty acres of land named in the deed of July, 1868, from William Seal to his son Thomas, is not subject to Pennington's decree.

The decree of the chancery court is reversed, and the cause remanded for further proceedings in accordance with this opinion.