## HENRY HODGES vs. BELL TAYLOR ET AL.

### SUPREME COURT, AUSTIN TERM, 1882.

*Trespass to try title—Fraudulent conveyance—Right of creditor to attack, when.*—When judgment was rendered, in 1871, against the maker of a note, given for the hire of negroes, the maker having received his discharge in bankruptcy from all debts existing prior to 1868, it was presumptively rendered on a debt from which the maker was released by his discharge in bank-

ruptcy, and whilst it was optional with him to plead this discharge, or to allow judgment to be taken against him, it is evident that after the discharge and prior to the judgment, the claim, like one barred by limitation, was not a claim capable of enforcement.

A creditor who seeks to set aside a conveyance of his debtor as fraudulent, must have a claim which can be enforced. Where the creditor's claim only becomes enforcible by the assent of the debtor, it would be unreasonable to construe that assent as empowering the creditor to attack the debtor's conveyance as fraudulent. The revival of a barred debt, or the failure to plead a discharge in bankruptcy, could not have been intended as assent to such an attack.

Appeal from Burleson county.—Opinion by Gould, C. J.—The suit was filed in the District Court of Burleson county, February 21, 1878, by Henry Hodges, to recover of Bell Taylor and her children certain land in said county.

Plaintiff claimed through a purchase at execution sale under a judgment in favor of E. M. Sanderlin against Thos. C. Evans, and charged that the land was the property of said Thos. C. Evans, and transferred to defendant in fraud of his creditors. The amended petition sets out the facts fully under which plaintiff claimed.

The case was tried December 10, 1881, and, under the direction of the court, the jury returned a verdict for defendant.

The appeal was perfected in accordance with law.

First proposition of appellant under the seventh assignment of error.—The court erred in charging the jury to find for the defendant on the ground that the debt under which the plaintiff claimed the right to attack the title from Thomas C. Evans to defendant had been discharged by the bankruptcy of said Evans.

The proposition is disclosed by the seventh assignment of error, and based upon the following facts:

1.    Thomas C. Evans, on April 7, 1863, executed his note to D. M. Sanderlin for $1866.65, upon which suit was brought in the District Court of Burleson county, February 13, 1867.

2.    An answer was filed by Evans, through counsel. The case was continued from term to term under a suggestion of bankruptcy, but no plea was ever filed setting up a discharge, and on April 4, 1871, judgment was rendered in favor of Sanderlin for $659.

3.    Execution was issued on said judgment May 31, 1871, and and returned in August following as unsatisfied. An *alias* issued November 11, 1873, and was levied on lands including the tracts in controversy.

4. The sale under this execution was enjoined upon the petition of defendant Bell Taylor, and others, filed in the District Court of said county November 24, 1873. This injunction was dissolved by consent, and without prejudice to either party, and a decree was rendered October 10, 1876, ordering a sale of the lands · in accordance with the said levy.

5. An order of sale was issued in accordance with the above decree March 28, 1877. The return thereon, made September 10, 1877, shows a regular sale, but failure of bidder to comply, etc. Alias issued October 5, 1877, and, after due advertisement, the land was sold to the plaintiff, Hodges, November 2, 1877, who, having complied with the terms of sale, received a deed from the sheriff.

6. The land in controversy was bought in 1866 by Thomas C. Evans of Lucie and Robert Burns, who made him a bond for title, which was never recorded, and has not been produced. Evans completed the payment in 1868, and, telling Burns he was insolvent, requested him to make the deed to his son, Charles I. Evans, which was done May 23, 1868.

7. On October 27, 1868, Charles I. Evans, at the request of Thomas C. Evans, conveyed the land ($312\frac{1}{2}$ acres) to his mother, Mary Evans. The deed recites a consideration "of love and affection," and is "to her separate use, etc., free from the debts of Thomas C. Evans," and was not recorded until October 27, 1872.

8. May 4, 1872, Charles I. Evans made another deed to his mother for the same land, less 40 acres. This deed, recorded June 14, 1877, recites a consideration of "love and affection and $1000," separate funds of grantee, and conveys the land to her separate use and benefit, "free from the debts of said Thomas C. Evans.

9. The deeds under which defendant claimed were, first, a deed to thirty acres, made by Charles I. Evans to Bell Taylor, February 12, 1870, and recorded May 3, 1870; second, a deed from the same to the same for ten acres, June 5, 1871; third, a deed from Mary and Thomas C. Evans for forty-one and one-half acres, made February 4, 1873. These deeds convey parts of the Burns' land aforesaid, and contain recitals of adequate considerations paid in cash.

10. Defendant read in evidence the discharge of Thomas C. Evans, issued to him by the United States District Court, Western District of Texas, December 10, 1869, which is in due form, and recites the adjudication of bankruptcy, as made December 30, 1868, and discharges him from all debts due at said date.

11.  Evans' schedule of liabilities exhibits in the Sanderlin note; but the note, then in suit, was never proven up in the bankruptcy proceedings.  Evans returned no assets.

12.  The instruction given by the court to the jury, and which is complained of, is as follows:  "By the deed of May 23, 1868, from Burns and wife to Charles I. Evans (whether made to defraud creditors of Thomas C. Evans or not), the legal title to the premises in controversy was vested in Charles I. Evans, and could only be impeached for fraud by the then existing creditors of Thomas C. Evans and those claiming under them.  It will be necessay, therefore, to determine whether or not D. M. Sanderlin, under whom the plaintiff claims, was, in legal contemplation, a creditor of Thomas C. Evans when the deed to Charles I. Evans was made.  This is a question which is determined by the records, deeds and other written instruments bearing on the subject, the effect of which it is for the court to declare to the jury.  And the court accordingly instructs you that Thomas C. Evans was duly discharged in bankruptcy from all his debts which existed prior to the thirtieth of December, 1868, and, among others, he was discharged from the debt to Sanderlin as it existed at the date of the deed to Charles I. Evans. That on the fourth day of April, 1871, Thomas C. Evans suffered judgment in favor of Sanderlin, and that the plaintiff's right accrued under a purchase at sheriff's sale under an execution issued on said judgment.  But, upon such a state of facts, he can only claim the rights of a creditor as of the date of the judgment, and would not be permitted to impeach the prior deed to Charles I. Evans on the ground of fraud.  You will, therefore, find for the defendant, Bell Taylor."

The judgment in favor of Sanderlin was rendered in an action on a promissory note, given for hire of negroes, and was therefore presumptively rendered on a debt from which Thomas C. Evans was released by his discharge in bankruptcy.  Whilst it was optional with Evans to plead this discharge, or to allow judgment to be taken against him, it is evident that after the discharge, and prior to the judgment, the claim, like one barred by limitation, was not a claim capable of enforcement.  The authorities are, that a creditor who seeks to set aside a conveyance of his debtor as fraudulent, must have a claim which can be enforced.  (Bump. on Fraudulent Conveyances, ch. 18, p. 491.)  If his claim be barred by limitation, he is not a creditor who can enforce his demand, therefore is not one who can successfully assail as fraudulent a conveyance made by his former debtor.  (Edwards vs. McGee, 31 Miss., 143.)  Yet, should he sue on this claim, and the debtor fail to plead limitation, he may obtain a judgment unquestionably valid as between him and the debtor.  So, if the claim being barred, the debtor sees fit to revive

it by a written acknowledgment of its justice, and a written promise to pay it, the debt becomes once more valid as between the creditor and debtor. In each case it is the assent or acquiescence of the former debtor, which results in a claim capable of enforcement. In the latter case that assent is expressed; in the former it is implied. Before the claim was revived, the alleged fraudulent conveyance was binding as between the grantor and grantee, and the title of the grantee was good, not only as against the grantor, but as against this former creditor of the grantee. That title being thus complete as against them, it is not believed that it could be affected or impaired by any transaction between them to which the grantee is not a party. The true date of the indebtedness is the new promise, or the judgment, and these being subsequent to the conveyance, the creditor, under the rule prevailing in this State, is not ordinarily one who can impeach that conveyance. (Savenberg vs. Biberstein, 52 Texas.)

After the discharge of Evans, Sanderlin could only enforce his claim against him by the assent of Evans, and in our opinion the court rightly held that Sanderlin could only claim the rights of creditor for the purpose of impeaching the deed to Charles I. Evans or of the date of the judgment.

There is another course of reasoning which leads to the same result. The ground on which the creditor is allowed to impeach a fraudulent conveyance is that it is a fraud upon his legal rights. But where the creditor's claim only becomes enforcible by the assent of the debtor, it would seem unreasonable to construe that assent as empowering the creditor to attack the debtor's conveyance as fraudulent. The revival of a barred debt, or the failure to plead a discharge in bankruptcy, could neither of them have been intended to assent to such an attack. The very fact that it is only by the debtor's assent that the claim is valid and enforcible, goes far to negative any right growing out of that assent to make the charge of fraud actual or constructive. The creditor only gets into court by virtue of the debtor's assent, and that being so, his charge of fraud against his debtor seems hardly admissible.

Again, the appellees had no such interest in the suit of Sanderlin against Evans as entitled them to intervene therein. It was the right of Evans to decline to plead his discharge if he saw fit, and upon his failure to plead it, Sanderlin became entitled to his judgment. That judgment being one to which appellees were not parties, and to which they had no right to become parties, should not preclude them so as to affect their title injuriously. The rule is that a judgment binds only parties and privies, and to this judgment appellees were neither parties nor privies.

The question presented is novel, and in the absence of authority directly in point, we have endeavored to answer it in accordance with our view of the principles applicable. In our opinion the court did not err in its charge, and the judgment should be affirmed. It is so ordered.