Bissell, P. J.
This is one of those contests between creditors of an insolvent debtor which frequently develop surprising differences of recollection and wherein the parties in attempting to save their claims sometimes depart from the lines established by high commercial honor. It looks very much as though the appellant had not only attempted, but succeeded in getting the better of Mrs. Hinda Solomon in the struggle for preference. Notwithstanding this fact we are not able to see that the conduct of Mrs. Solomon’s agents in the transaction would be wholly exempt from criticism. The judgment which possibly worked out substantial justice cannot be permitted to stand. *522 In 1893, Mrs. Cohn was doing a merchandise business in the city of Denver, carrying it on through her husband Fred Cohn. The business was unprofitable and Cohn and Mrs. Hinda Solomon had some business transactions. Mrs. Solomon however did business through her husband who managed it and executed all papers for her precisely as though the business was his own. There was some real estate dealings carried on by the Cohns and they seem to have borrowed some money from Mrs. Solomon through Isaac her husband. We are not able from the record to dig out the history of all these matters, nor do we regard them as essential to the determination of the appeal. They are simply suggested to show the intimacy of the relation between the parties. The Cohns bought goods of the appellant Kaufman who was a merchant in Chicago, for which thejr failed to pay. Kaufman came on once or twice to make some arrangement about the debt and on one of his trips had an interview with the Solomons and the scheme was concocted to get Cohn to give his note for thirty days and Mrs. Solomon hers at sixty days, the latter to be taken care of by the Cohns in the purchase of goods in Chicago with the money thus obtained. At the time this matter was talked about and arranged there was a good deal of evidence tending to show that Kaufman stated to Solomon that there were goods at the depot on bills of lading which should be turned over to the warehouse, of which one Howard was the manager, to hold as security for his note. The weight of the proof is that way. Isaac Solomon then on behalf of his wife executed the paper which was delivered. The bills of lading were turned over to Howard, but in some way which is not very well explained Kaufman and another went to the warehouse and the bills of lading and invoices disappeared so that all Mrs. Solomon got for her note which was good, was the unsecured note of a bankrupt. Of course, this was if true a fraud on Solomon, and Kaufman should reap no benefit from it. The jury seem to have thought that way and found a verdict for the defendant. To proceed however and develop the case and show the difficulty with *523 the judgment we must state that after this thing was done, when Isaac Solomon found out the goods were not in the warehouse he got suspicious and went to the store to find out what was being done, and found a person there who turned out to be the brother of the appellant. He could get no satisfaction from him as to what was being done, though it looked very much as if the goods were being spirited away since the brother showed him a telegram which stated substantially that the goods were to be shipped to Muscatine, Iowa, and Solomon would be advised by letter of the situation. Thereupon-Isaac in the name of his wife transferred the note to his son Jacob who brought an attachment suit and levied it on the property. After this was done Kaufman commenced his suit against the sheriff to recover the goods, alleging a title by virtue of the bill of sale which had been executed to him by Fannie Cohn. The suit went to trial on an issue tendered by the answer which was to the effect that this sale as between Cohn and Kaufman was made to defraud creditors, was in fact and in law fraudulent, and stating also that Jacob’s title was a naked one as trustee, holding only for his mother and that he was to account to her for the proceeds. Obviously the plea was put in this way to avoid the difficulties with the defense which as we shall see is unavailing to an assignee of a claim who acquires title after the transfer has been made and the fraud committed, who cannot by a transfer of the debt acquire the right to maintain a suit on account of the fraud or maintain a defense based on it. It will be observed that Jacob’s title to the note was perfectly good as averred — the title to a note passes by assignment or indorsement. He had good title and had a right to bring suit by attachment. He acquired it however after the transfer was made, and there was no attempt at the time to convey to him the right to bring suit on the ground of fraud.
This narration covers all the substantial facts which we need to state for the purposes of the decision. We shall pass over most of the errors which the appellant has dis *524 cussed in his brief, regarding them as wholly immaterial and only cursorily mentioning them.
We are quite of the opinion it was competent to prove what was said by the person apparently in charge of the store after the transfer, although he happened to be the brother of the appellant and although there was no proof that he was the appellant’s agent for any specific purpose. He was there in the store and apparently packing up the goods and when the Solomons inquired of him what he was doing and he stated it, the transaction was such as to make the testimony entirely admissible. We entertain the same opinion regarding the telegram because it contained by its terms a direction to state to Solomon that an explanation of the shipment of the goods to Muscatine or away from Denver would be made in a letter which was to follow. This very distinct reference to Solomon would undoubtedly make the telegram admissible.
We think that the objections to the answers made in the depositions were well sustained for in reality they amount to nothing except statements by Kaufman of what somebody else had said to him in regard to the attachment of the stock and advising him to come at once and arrange matters. None of these errors are of much significance except the first two. As regards the depositions they can be easily fixed for the subsequent trial. We might have some difficulty with the instructions but for the fact that they were given orally and the only objection taken was a general one at the conclusion of the charge and in the general form, to the giving of which and to every one of which the plaintiff excepted. The charge was an entity, it was not divided into paragraphs or numbered nor did it consist of specific parts or specific propositions, but was given as a whole and covered the entire case. As has been repeatedly decided by appellate tribunals objections of this sort are wholly unavailable to save any question for the purposes of an appeal.
Coming now to the fundamental question which we think controls the matter we may very briefly state that Jacob Sol *525 omon’s title, which was the basis of the attachment, and which the sheriff pleaded as a defense, was simply a title to the note by virtue of an assignment or indorsement from' Mrs. Solomon, his mother, to him. This was after the fraud had been perpetrated, the sale had been made and the goods delivered, and as we understand it this subsequent holder of the paper acquired no title which will enable him to attack the transaction on the ground that the transfer was fraudulent and intended to defraud creditors. Jacob Solomon was not a creditor when he took the paper nor had he been, and taking title as he did after the sale was completed, as we understand the cases, he is in no condition to attack the sale. No proof was made of any sort which tended to support the averment in the answer to the point that he was simply a conduit or a naked trustee enforcing title for the benefit of the holder, Mrs. Solomon, who was originally the creditor. Den on Demise of Vanderveere v. Gaston, 25 N. J. Law, 615; Anderson v. Anderson, 64 Ala. 403; Pennington v. Seal, 49 Miss. 518; Soden v. Soden, 34 N. J. Equity, 115; Hodges v. Taylor, 57 Tex. 196; Jones v. Roberts, 65 Me. 273; Janvrin v. Janvrin, 60 N. H. 169.
It is equally clear that the transfer of the note did not carry with it the right of action which had accrued to Mrs. Solomon by reason of the fraudulent transfer, and that there could have been no such assignment of title as to vest it in Jacob and authorize him to bring suit. In other words, this sort of an action to set aside a claim on the ground of fraud seems not to be assignable. There was no attempt to transfer the right to maintain the action because of the fraud, and it is quite clear the indorsement of the note would not carry with it any such right. We refer to the point because it seems to be under the authorities quite clearly conclusive of Jacob’s rights. Zabriskie v. Smith, 13 N. Y. 322; Carroll & Lyon v. Potter, Walker’s Chan. 355; Morris v. Morris, 5 Mich. 171; Dickinson v. Seaver, 44 Mich. 624; Brush v. Sweet, 38 Mich. 574; Foster v. Wight, 123 Mass. 100.
These principles which are well established by the cases *526 cited demonstrate the invalidity of the judgment on the case made by the evidence. What the ultimate proof may be, or whether it will be varied at all, we cannot foresee, but as the case stands on the record the verdict and judgment entered thereon cannot be upheld, and will accordingly be set aside and a new trial ordered in accordance with this opinion.

Reversed.