751 F.2d 781
 12 Collier Bankr.Cas.2d 457, 12 Bankr.Ct.Dec. 1027,
Bankr. L. Rep. P 70,234
 Joan F. CARLTON, Individually and as Representative of the
Estate of William R. Carlton, Deceased, and as Next Friend
of Robert Carlton, Melissa Carlton, David Carlton and Lynne
Carlton, Plaintiff-Appellee,
v.
BAWW, INC., et al., Defendants-Appellants.
 No. 84-1032.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 28, 1985.
 
 Hobart Huson, Jr., San Antonio, Tex., for defendants-appellants.
 Tinsman & Houser, Inc., Franklin D. Houser, Dennis P. Bujnoch, San Antonio, Tex., for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Texas.
 Before BROWN, RANDALL and TATE, Circuit Judges.
 RANDALL, Circuit Judge:
 
 
 1
 Joan F. Carlton brought this diversity suit to void a fraudulent conveyance of real property under Texas law. Before trial, defendant Herbert M. Shelton, the transferor of the property, sought relief under Chapter 7 of the Bankruptcy Code, which, because of the Code's automatic stay, halted the proceedings in the district court. The bankruptcy court lifted the stay, however, and authorized the trustee of Shelton's estate to intervene in this suit. On the first day of trial, an amended petition was filed adding the trustee as a party-plaintiff. A jury found that Shelton fraudulently conveyed the property in question and the court entered judgment vesting title to the property in the trustee. The transferors and transferees of the property, defendants below, bring this appeal.
 
 
 2
 At oral argument, we raised the issue of subject matter jurisdiction sua sponte. Specifically, we inquired whether the trustee's joinder destroyed diversity. We received supplemental briefs on the issue and now hold that, although the jurisdictional allegations of the pleadings are defective, the district court properly exercised subject matter jurisdiction of this suit. Therefore, we grant appellees' motion, which accompanied their supplemental brief, for leave to amend the jurisdictional allegations of their complaint. On the merits, we affirm the district court's judgment.
 
 I.
 
 3
 To frame the jurisdiction issue, we briefly recount the significant events that have occurred in this suit thus far. William Carlton died in October of 1978. Soon thereafter, Joan F. Carlton ("Carlton"), his wife, commenced for herself and her children a wrongful death suit in federal court against Shelton and another defendant. In January of 1980, Shelton allegedly conveyed some real property (the "property") to a corporation formed by his children. In expectation of recovering judgment in the wrongful death action, Carlton commenced this separate suit to void the conveyance under Texas law as a fraud on Shelton's creditors. In September of 1982, Carlton in fact obtained a substantial wrongful death judgment against Shelton, which we have since affirmed on appeal. See Carlton v. Shelton, 722 F.2d 203 (5th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 2389, 81 L.Ed.2d 347 (1984).
 
 
 4
 Pretrial matters in this suit proceeded until early February of 1983. At that time, Shelton filed for Chapter 7 relief, and proceedings herein were automatically stayed. See 11 U.S.C. Sec. 362. In late April of 1983, Carlton filed with the bankruptcy court an Original Complaint to Lift Stay seeking permission to continue prosecution of this suit. Before the complaint was heard, however, the bankruptcy court, on May 2, 1983, released Shelton from all dischargeable debts.[1] The adversary complaint to lift stay was considered on May 24, 1983. On July 7, 1983, the bankruptcy court signed an order lifting the stay and allowing Carlton and Claiborne Gregory, the trustee of Shelton's estate (the "trustee"), to continue prosecution of this suit.[2] In a subsequent order, the bankruptcy court authorized the trustee to hire Carlton's attorneys as special counsel to prosecute this lawsuit. Carlton filed her Third Amended Complaint, which adds the trustee as a party-plaintiff, on the first day of trial. The suit was prosecuted at trial by counsel originally retained by Carlton, who were apparently acting on behalf of both Carlton and the trustee.[3]II.
 
 
 5
 Carlton is a citizen of California; all defendants are citizens of Texas. Diversity jurisdiction was therefore properly invoked when this suit was initially filed. See 28 U.S.C. Sec. 1332; Strawbridge v. Curtiss, 7 U.S. 267, 2 L.Ed. 435 (1806). The general rule, of course, is that diversity is determined at the commencement of the lawsuit; subsequent occurrences will not normally divest the court of subject matter jurisdiction. See, e.g., Rosado v. Wyman, 397 U.S. 397, 405 n. 6, 90 S.Ct. 1207, 1214 n. 6, 25 L.Ed.2d 442 (1970) ("[A] federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though one of the parties may later change domicile or the amount recovered falls short of $10,000."); Mas v. Perry, 489 F.2d 1396, 1399 (5th Cir.) (same), cert. denied, 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974). This rule is not limited, however, to cases involving an existing plaintiff or defendant who changes domicile while the lawsuit is pending; under certain circumstances, non-diverse parties may be joined after commencement of the lawsuit without destroying jurisdiction. See, e.g., Rogers v. Aetna Casualty and Surety Co., 601 F.2d 840, 843 n. 4 (5th Cir.1979) (Rule 14 impleader of non-diverse third-party defendant; ancillary jurisdiction); Ransom v. Brennan, 437 F.2d 513, 516 (5th Cir.) (Rule 25 substitution of non-diverse representative following death of original party), cert. denied, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971); Gaines v. Dixie Carriers, Inc., 434 F.2d 52, 54 (5th Cir.1970) (Rule 24(a) intervention as of right by one other than Rule 19(b) indispensable party). If, however, an amendment to the pleadings alters the nature of the action or adds a party without whom the case cannot continue, jurisdiction must be reassessed at the time of the change. See, e.g., Lewis v. Odell, 503 F.2d 445 (2d Cir.1974); Grady v. Irvine, 254 F.2d 224 (4th Cir.), cert. denied, 358 U.S. 819, 79 S.Ct. 30, 3 L.Ed.2d 60 (1958); 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction 2d Sec. 3608. As an initial matter, therefore, we must determine whether Shelton's bankruptcy made the trustee an essential party to this action or otherwise altered the nature of the case.
 
 III.
 
 6
 Shelton's bankruptcy clearly had a profound impact on this action. In In re Mortgageamerica Corp., 714 F.2d 1266 (5th Cir.1983), we examined the effect of the transferor's intervening bankruptcy on a creditor's state-law attempts to void a fraudulent transfer. We held that property that the debtor has fraudulently conveyed remains "property of the estate," see 11 U.S.C. Sec. 541(a)(1): "The automatic stay under [11 U.S.C.] section 362(a) thus applies and prevents a creditor from continuing to pursue a cause of action under the Texas Fraudulent Transfers Act after a petition for bankruptcy has been filed [by the transferor]." Id. at 1275. Thus, Shelton's bankruptcy, standing alone, barred prosecution of this lawsuit.
 
 
 7
 Bankruptcy did not, however, forever extinguish the right to recover property that Shelton may have fraudulently conveyed. Bankruptcy simply caused that right to vest in the trustee and placed the future of this lawsuit within the control of the bankruptcy court. See In re Mortgageamerica Corp., 714 F.2d at 1275 (citing Glenny v. Langdon, 98 U.S. 20, 30, 25 L.Ed. 43 (1878)). Of course, the bankruptcy court has the authority "for cause" to lift the automatic stay and to allow creditors to continue actions against the debtor and his property. See 11 U.S.C. Sec. 362(d)(1). The Code also gives the trustee a series of avoidance powers through which he can recapture property of the estate. Among these is section 544(b) which allows the trustee, as statutory successor to the debtor's creditors, to void fraudulent conveyances to the extent permitted by applicable non-bankruptcy law. See 11 U.S.C. Sec. 544(b).[4] In this case, both of these powers were exercised: the bankruptcy court lifted the stay and authorized the trustee to intervene in this state-law suit, presumably in his role as section 544(b) successor to Carlton's creditor status.
 
 
 8
 All parties apparently concede that, in light of the automatic stay and the bankruptcy court's order authorizing intervention, the trustee became the only party who could prosecute this lawsuit.[5] Under settled principles of federal jurisdiction, belated joinder of such a party is clearly an event requiring reevaluation of subject matter jurisdiction. See, e.g., Haas v. Jefferson National Bank, 442 F.2d 394, 396 (5th Cir.1971); 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil Sec. 1610 ("a person who is regarded as indispensable ... cannot be joined unless his presence in the action is consistent with the statutory limits on the subject matter jurisdiction of the federal courts"). If jurisdiction is based on diversity, for example, joinder of an indispensable party of non-diverse citizenship deprives the federal court of power to hear the case. See Haas v. Jefferson National Bank, 442 F.2d at 396 (citizenship of indispensable party must be considered). This case involves more than the joinder of an indispensable party and presents an even clearer case of a change requiring that jurisdiction be reexamined. Cf. Smith v. State Farm Fire & Cas. Co., 633 F.2d 401 (5th Cir.1980) (bankruptcy trustee not an indispensable party in debtor's state law action on insurance policy). The bankruptcy court's order lifting the stay and authorizing intervention not only made the trustee indispensable; it seems to us that it also made Carlton, who abandoned her claims for money damages prior to trial, Record Vol. II at 32, superfluous. Although, according to section 544(b) of the Bankruptcy Code, the rule of decision did not change, the trustee's intervention, in effect, transformed this into a completely new lawsuit. The district court, therefore, should have reassessed its subject matter jurisdiction at that time. We examine the jurisdiction question hereafter as if the trustee had himself brought this fraudulent conveyance suit under section 544(b).
 
 IV.
 
 9
 Since diversity is the only basis for jurisdiction asserted in the pleadings, we must consider the citizenship of the trustee. The parties have referred us to cases presenting a choice, for diversity purposes, between the citizenship of representative parties and the citizenship of those they represent. We find these cases inapposite. On the authority of Messer v. American Gems, Inc., 612 F.2d 1367 (4th Cir.) (citizenship of non-diverse administratrix who has no stake in suit does not control), cert. denied, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980), appellees ask us to hold that the trustee is a nominal party whose citizenship should be ignored; Carlton, according to appellees, is the true beneficiary of this action and her diverse citizenship should control. This argument, which we reject, ignores the fact that the trustee in an avoidance action acts on behalf of the estate for the benefit of all creditors. E.g., In re Mortgageamerica Corp., 714 F.2d at 1275. On the authority of Navarro Savings Ass'n v. Lee, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) (citizenship of active trustees of business trust controls), appellants ask us to hold that, since he has active powers of management and control, the trustee's citizenship is determinative. This argument, which we likewise reject, ignores the fact that the citizenship for diversity purposes of bankruptcy trustees has always been the subject of a special rule: "[I]t is the citizenship of the bankrupt rather than the citizenship of the trustee in bankruptcy that is determinative for diversity jurisdiction." 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction 2d Sec. 3606. Thus, since Shelton is a citizen of Texas, where all defendants are also citizens, appearance of his trustee as plaintiff destroyed diversity jurisdiction.
 
 V.
 
 10
 Appellees now assert, however, that, notwithstanding the failure of the jurisdictional basis asserted in their pleadings, subject matter jurisdiction exists because the trustee was acting pursuant to avoidance powers granted to him by the Bankruptcy Code. We agree. Section 1334 of Title 28, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Act"),[6] grants the district courts original jurisdiction of, among other things, "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. Sec. 1334(b) (1984). A proceeding by a trustee to void a fraudulent conveyance clearly "arises under title 11."[7]
 
 
 11
 We realize that the 1984 Act authorizes the district courts to refer matters within their section 1334 jurisdiction to non-Article III bankruptcy judges, see 28 U.S.C. Sec. 157, and that the district judges of the Western District of Texas have adopted a blanket order of reference.[8] Moreover, we note that, under the 1984 Act, "proceedings to determine, avoid, or recover fraudulent conveyances" are "core proceedings" which, when referred by the district courts, may be prosecuted to final judgment before bankruptcy judges. See 28 U.S.C. Sec. 157(a)(2)(H) (1984). Constitutional questions aside,[9] the bankruptcy judge that lifted the stay and authorized intervention in this case could instead have required the trustee to litigate this matter in the bankruptcy court.
 
 
 12
 The Western District's order of reference does not, however, preclude the district judges of that district from exercising section 1334 jurisdiction. A referral from the district court to a bankruptcy judge does not forever divest the district court of original subject matter jurisdiction.[10] The 1984 Act makes clear that the opposite is true: section 157(d) provides that a district court "may withdraw, in whole or in part, any case or proceeding referred" to the bankruptcy judges of the district. By allowing trustee intervention, the district court effectively withdrew this matter from the bankruptcy judge to whom it otherwise would have been automatically referred for disposition by the blanket order. The district court was then free to exercise section 1334 jurisdiction of this case. Cf. In re White Motor Corp., 42 B.R. 693, 702 (N.D.Ohio 1984) (applying Sec. 157(d) withdrawal provisions to case pending on effective date of 1984 Act).
 
 
 13
 To recapitulate, we hold that: (1) appearance of Shelton's trustee effectively transformed this lawsuit into a section 544(b) action arising under title 11; (2) although the trustee's citizenship destroyed diversity, the district court had subject matter jurisdiction of the case under section 1334; and (3) although the Western District of Texas has referred core proceedings like this one to bankruptcy judges for final disposition, the district court was free, under section 157(d), to accept the bankruptcy judge's invitation, expressed in the order lifting the stay and authorizing intervention, to withdraw referral of this particular aspect of Shelton's bankruptcy case and to exercise subject matter jurisdiction of this proceeding.
 
 VI.
 
 14
 Although we have concluded that the district court had subject matter jurisdiction of this case, our analysis is not complete. It is axiomatic that a federal complaint must state "the grounds upon which the court's jurisdiction depends." Fed.R.Civ.P. 8(a); 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil Sec. 1214 (failure to plead jurisdiction "normally will result in a dismissal of the complaint ... unless the defect can be cured by an amendment"). The complaint in this case was not, however, amended to state the new jurisdictional basis that arose when the trustee became a party. We hold, however, that, pursuant to 28 U.S.C. Sec. 1653, appellees should be given an opportunity to amend their pleadings to assert the correct jurisdictional basis for this lawsuit. Section 1653, a statute which we construe liberally, see McGovern v. American Air Lines, 511 F.2d 653, 654 (5th Cir.1975), provides: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." Under this statute, we have (1) remanded cases to the district court to consider the propriety of amendments to defective jurisdictional allegations, see, e.g., Strain v. Harrelson Rubber Co., 742 F.2d 888, 889-90 (5th Cir.1984); Illinois Central Gulf RR Co. v. Pargas, Inc., 706 F.2d 633 (5th Cir.1983), and (2) where jurisdiction is clear from the record, permitted direct amendments to the pleadings without a remand, see, e.g., Sheehan v. Army and Air Force Exchange Serv., 619 F.2d 1132, 1137 n. 7 (5th Cir.1980), rev'd on other grounds, 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982); Niagara Fire Insurance Co. v. Dyess Furniture Co., 292 F.2d 232, 233 (5th Cir.1961). Since it appears plainly from this record that jurisdiction exists, it best serves the interests of justice to grant the motion for leave to amend in this court, without requiring a perfunctory remand for that purpose. E.g., Sheehan, 619 F.2d at 1137.
 
 VII.
 
 15
 On the merits, we affirm. See Loc.R. 47.6.
 
 VIII.
 
 16
 Conclusion.
 
 
 17
 The motion for leave to amend is GRANTED and the judgment is AFFIRMED.
 
 
 
 [1]
 Relying on Hodges v. Taylor, 57 Tex. 196 (1882), and Gochenour v. George & Francis Ball Foundation, 35 F.Supp. 508 (S.D.Ind.1940), aff'd, 117 F.2d 259 (7th Cir.), cert. denied, 313 U.S. 566, 61 S.Ct. 942, 85 L.Ed. 1526 (1941), appellants insist that, following discharge, the trustee was the only party with standing to attack the conveyance made the basis of this suit. Because we hold that the automatic stay and the bankruptcy court's order lifting the stay combined to vest the right to bring suit to void this conveyance in the trustee alone, we express no opinion as to the applicability of these cases. We note, however, that discharge did not, as appellants argued at one point below, foreclose the right to void this conveyance altogether. See Philco Finance Corp. v. Pearson, 335 F.Supp. 33 (N.D.Miss.1971)
 
 
 [2]
 The circumstances surrounding the lifting of the stay are not altogether clear to us. Apparently, Carlton filed two adversary complaints to lift stay in the bankruptcy court, under Adv. No. 5-83-0684T and Adv. No. 5-83-0685T, respectively. The first of these, no. 5-83-0684T, asks that Carlton be allowed to continue this suit to void a fraudulent conveyance. Shelton filed an answer objecting to relief from the stay; the trustee, on the other hand, responded that the stay should in fact be lifted. The bankruptcy court signed an order lifting the stay which allows "plaintiffs [Carlton] to prosecute on and continue" this lawsuit, but makes no mention of the trustee's intervention. The bankruptcy file also contains, however, a notation on a docket sheet, apparently in the court's hand, that "trustee and creditor may proceed in federal court to set aside the conveyance." All parties apparently consider that, by this notation, the order lifting stay is conditioned on intervention by the trustee. At any rate, all agree that this lawsuit could not continue without the trustee. In light of these concessions and the bankruptcy court's subsequent order authorizing the trustee to hire Carlton's counsel for purposes of intervention, we consider the order lifting stay as if expressly conditioned upon intervention by the trustee. Accordingly, we pretermit deciding whether the bankruptcy court could have lifted the stay without requiring intervention by the trustee and whether the district court could have entered judgment granting the property to an absent trustee
 Adversary complaint no. 5-83-0685T seeks relief from the stay with respect to appeal of the wrongful death judgment. It is not relevant to this appeal.
 
 
 [3]
 Our analysis of the trustee's appearance in this lawsuit is hampered by the offhand manner in which it was handled below. Appellants maintain, not without support in the record, that leave to file the Third Amended Complaint adding the trustee was not obtained and that the parties went to trial on the Second Amended Complaint. Apparently, the Third Amended Complaint was presented to the court on the first day of trial, October 4, 1983; the copy of the complaint in the record, Record Vol. I at 189, bears the clerk's stamp indicating that it was filed on October 4; the civil docket sheet also reflects an October 4 filing date, Record Vol. I (docket sheet). The record does not, however, contain a motion for leave to file the amended complaint. See Fed.R.Civ.P. 15(a). The amendment was discussed, however, at a conference between court and counsel before jury selection on October 4. Defendants objected to the filing of the amended complaint, and, after a lengthy discussion about an additional factual allegation also added by the amended complaint, the district court stated:
 Now, insofar as the Bankruptcy Trustee being represented before the Court, it is not necessary in my judgment. We are going to try the fact issues and whichever way the fact issues shake out, the appropriate orders will be entered, if necessary restoring the stock and/or the land to the bankruptcy estate.
 Record Vol. II at 17 (emphasis supplied). In this ambiguous statement, the court indicated that the trustee need not be joined as a party and, at the same time, that any judgment entered for plaintiffs would be in favor of the trustee. The docket sheet entry describing this pretrial conference indicates that leave was in fact granted to file the amended complaint.
 The trustee was introduced to the jury as a party to the lawsuit during voir dire. Record Vol. II at 49. The final judgment entered in this case lists the trustee as a party: "Plaintiff, Claiborne B. Gregory, Jr., Trustee for the Bankruptcy of the Estate of HERBERT M. SHELTON, appeared in person and through his attorneys." Record Vol. I at 231. The judgment, in fact, vests the trustee with legal title to the land involved and orders him to sell the land for the benefit of Shelton's creditors.
 Notwithstanding the ambiguity created by the court's comments at the pretrial conference, we conclude that the trustee was in fact joined as a party to this lawsuit.
 
 
 [4]
 Section 544(b) provides:
 (b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.
 
 
 [5]
 As previously noted, we need not decide, given the parties' interpretation of the order lifting stay, the full scope of options available to the bankruptcy court and the trustee with respect to stay of a pending creditor's suit to void a conveyance. See note 2, supra
 
 
 [6]
 This case was pending on July 10, 1984, the effective date of the 1984 Act. See Pub.L. No. 98-353, Sec. 122(a), 98 Stat. 333, 346 (1984). Absent manifest injustice or congressional intent to the contrary, we generally apply the law as it exists when we make our decision. See Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). This rule applies as well to changes in the law which affect jurisdiction. See Andrus v. Charleston Stone Products Co., 436 U.S. 604, 608 n. 6, 98 S.Ct. 2002, 2005 n. 6, 56 L.Ed.2d 570 (1978) (applying 1976 amendment of federal-question statute to pending cases); Bruner v. United States, 343 U.S. 112, 116-17, 72 S.Ct. 581, 584, 96 L.Ed. 786 (1952) ("when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law"). Much of the 1984 Act is designed to cure the constitutional defects of the bankruptcy court system identified by the Supreme Court in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Clearly, Congress intended for most of this curative legislation to apply to pending cases. Section 115 of the 1984 Act, for example, provides that jurisdiction of pending bankruptcy matters which, under the defective 1978 Act, was vested in the bankruptcy courts, shall vest in the district courts on the effective date of the 1984 Act. See Pub.L. No. 98-353, Sec. 115(a), 98 Stat. 333, 343 (1984). When Congress intended for certain provisions to have prospective effect only, it expressly so provided. See Pub.L. No. 98-353, Sec. 122(b), 98 Stat. 333, 346 (1984) ("Section 1334(c)(2) ..., as added by this Act, shall not apply with respect to cases ... that are pending on the date of enactment of this Act...."). Moreover, we discern no injustice in retroactive application of the 1984 Act to pending cases. Therefore, we evaluate the district court's jurisdiction under the 1984 Act. See, e.g., Romeo J. Roy, Inc. v. Northern Nat'l Bank, 740 F.2d 111, 112 (1st Cir.1984) (district court found that it lacked jurisdiction under 1978 Act; since the 1984 Act, which became effective while appeal was pending, gives district court jurisdiction, case remanded for district court to exercise jurisdiction); In re Osborne, 42 B.R. 988, 993 (W.D.Wis.1984) (appeal from bankruptcy court to district court; appellant desires de novo review mandated by the post-Northern Pipeline Emergency Rule; court applies clearly erroneous standard of review required by the 1984 Act); In re G & L Packing Co., 41 B.R. 903, 913 n. 2 (N.D.N.Y.1984) (applying 1984 Act to pending appeal from bankruptcy court)
 
 
 [7]
 Section 1334(b), which grants "arising under" jurisdiction, was copied verbatim from section 1471(b) of the 1978 Act. The legislative history of the latter, therefore, is instructive:
 The phrase 'arising under' has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11. For example, a claim of exemptions under 11 U.S.C. 582 would be cognizable by the bankruptcy courts, as would a claim of discrimination in violation of 11 U.S.C. 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in subchapter III of chapter 5 of title 11. Many of these claims would also be claims arising under or related to a case under title 11.
 H.R.Rep. No. 595, 95th Cong., 2d Sess. 445-46 (emphasis supplied), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 6401.
 
 
 [8]
 The order of reference provides, in pertinent part:
 ORDERED nunc pro tunc as of June 27, 1984, that any and all cases under Title 11 of the United States Code, and any or all proceedings arising under Title 11, United States Code, or arising in or related to a case under Title 11, United States Code, which were pending in the Bankruptcy Court of the Western District of Texas on June 27, 1984, which have been filed in this district since that date and which may be filed herein hereafter (except those cases and proceedings now pending on appeal) be and they are hereby referred to the Bankruptcy Judges of this district for consideration and resolution consistent with law.
 It is further ORDERED that the Bankruptcy Judges for the Western District of Texas be, and they are hereby directed to exercise the authority and responsibilities conferred upon them as Bankruptcy Judges by the Bankruptcy Amendments and Federal Judgeship Act of 1984 and this Court's order of reference, as to all cases and proceedings covered by this order from and after June 27, 1984.
 
 
 [9]
 Because this case was tried before an Article III district judge, and because it is not a purely state law claim, we need not consider the argument that the 1984 Act has not in fact cured the constitutional defects of the 1978 bankruptcy court system. Since the issue is not before us, we express no opinion on the constitutionality of the 1984 Act
 
 
 [10]
 Of course, when a referred core proceeding is finally disposed of by a bankruptcy judge, the district court has appellate jurisdiction. See 28 U.S.C. Sec. 158(a) (1984)