MADDOX, Justice.
This is a fraudulent conveyance ease. Fred Graham conveyed jointly owned real estate to his wife, Geneva Graham. Robert and Dorothy Welch, who later became judgment creditors of Fred Graham, sued to set aside the conveyance on the grounds that it had been made to defraud them as creditors. The trial court entered a summary judgment for the defendants. We affirm.
The facts are essentially undisputed. In 1966, Fred Graham and his first wife, Dorothy Graham, purchased a house for $19,185, located on Conger Road in Anniston, Alabama. The Grahams financed the purchase by a loan from Anniston Federal Savings and Loan Association, giving the lender a mortgage on the property to secure the payment of their note. The payments on their note were $110 per month. Fred and Dorothy Graham were divorced in June 1968. The divorce judgment gave Dorothy Graham exclusive use and occupancy of the house on Conger Road for the benefit of herself and the child of the marriage. This use and occupancy was to continue until 1978, when the child reached the age of 19. Fred Graham was ordered to make payments on the house during that period. He and Dorothy Graham remained co-owners of the property.
In the fall of 1968, Fred Graham married Geneva Graham. Subsequently, they purchased a house located on McArthur Drive in Anniston. On March 21, 1978, Fred and Geneva Graham jointly purchased, for $20,-368.16, the Conger Road property by bidding at a court-ordered sale. This court-ordered sale of the Conger Road property resulted from a dispute between Fred Graham and Dorothy Graham.
In 1978, when Fred and Geneva Graham purchased the house on Conger Road, they received an insurance check, which was made payable to them jointly, to compensate them, as owners, for damage done to the house by Dorothy Graham before she moved out. At approximately this time, the couple sold their house on McArthur Drive. Both the insurance proceeds and the money received from the sale of the house on McArthur Drive were used to pay the note to Anniston Federal Savings and Loan and to repair the house on Conger Road. In addition, according to the Grahams, from the time of their marriage in 1968 until 1978, when they jointly purchased the house on Conger Road, Geneva Graham had made the monthly payments of $110 to Anniston Federal Savings and Loan on the note secured by the mortgage that had been executed by Fred and Dorothy Graham.
On October 16, 1985, an altercation took place between Fred Graham and Robert Welch. As a result, in 1987, Robert and Dorothy Welch sued Fred Graham, claiming an assault by Fred Graham and claiming damages for injuries allegedly inflicted on Robert Welch. A jury awarded $300,000 to Robert and Dorothy Welch, and the court entered a judgment against Fred Graham in that amount.
On October 18, 1985, two days after the altercation that resulted in the assault action, Fred Graham conveyed to his wife Geneva his one-half interest in the Conger Road property. According to the Grahams, before this conveyance was made Geneva had given Fred $1,500 to pay an attorney to represent him in criminal proceedings resulting from the altercation with Robert Welch and had further agreed to give an additional $8,500 to cover the balance of the attorney fee. Fred said he agreed to convey his interest in the Conger Road property in consideration of the monies Geneva had previously paid between *1029 1968 and 1978 on the mortgage and the monies she gave him to pay his legal fees. The money that was used to pay the majority of the legal fees came from the proceeds of a certificate of deposit owned by Geneva that had been purchased with money she had earned and saved while working over the years.
The trial court entered a summary judgment in favor of Fred and Geneva Graham. Robert and Dorothy Welch appeal.
Rule 66, A.R.Civ.P., sets forth a two-tiered standard for entering a summary judgment. The rule requires the trial court to determine (1) that there is no genuine issue of material fact, and (2) that the moving party is entitled to a judgment as a matter of law. The burdens placed on the moving party by this rule have often been discussed by this Court:
“ ‘The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala.1977); Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co., 390 So.2d 601 (Ala.1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala.1980).’”
Berner v. Caldwell, 543 So.2d 686, 688 (Ala.1989) (quoting Schoen v. Gulledge, 481 So.2d 1094 (Ala.1985)).
The standard of review applicable to a summary judgment is the same as the standard for granting the motion; that is, we must determine whether there was a genuine issue of material fact and, if not, whether the Grahams were entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the Welches and resolve all reasonable doubts against the Grahams.[1] Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala.1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
The basic law on fraudulent conveyances is expressed in § 8-9-6, Ala.Code 1975:
“All conveyances or assignments in writing, or otherwise, of any estate or interest in real or personal property ... made with intent to hinder, delay or defraud creditors, purchasers or other persons of their lawful actions, damages, forfeitures, debts or demands ... are void.”
Thus, as the Court stated in Roddam v. Martin, 285 Ala. 619, 623, 235 So.2d 654, 657 (1970), under the statute the concurrence of three elements is required before a conveyance can be declared fraudulent: (1) that the creditor was defrauded; (2) that the debtor intended to defraud; and (3) that the conveyance was of property out of which the creditor could have realized his or her claim or some portion of it. Concurrence of the three elements is not enough to set aside the conveyance when there is a valuable consideration given for the transfer. In J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834, 843 (Ala.1981), the court stated:
“Further proof, however, is required before a conveyance found to be fraudulent is due to be set aside.
“Where it appears the transfer in question was made for a valuable consideration, a plaintiff seeking to invoke the protection of Code 1975, § 8-9-6, must show the mutual fraudulent intent of the parties to the transaction. Proof of the grantor’s intent alone is insufficient to cause the conveyance to be set aside.”
(Emphasis in original.)
The Welches concede that there is no direct evidence of intent to defraud them on *1030 the part of the Grahams and that their claim of fraud is based on the circumstantial evidence arising from the timing of the conveyance. In Smith v. Wilder, 270 Ala. 637, 650, 120 So.2d 871, 883 (1960), overruled on other grounds, J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834, 844 (Ala.1981), the Court stated that once one seeking to set aside a conveyance on a theory of constructive fraud shows that his or her debt antedated the conveyance, the burden shifts to the grantee to show (1) that the grantor owed a debt to the grantee; (2) that the consideration for the conveyance was the extinguishment of the existing debt; and (3) that the value of the property conveyed was no more than a fair equivalent for the debt amount. In addition, conveyances of property between a husband and wife in the face of a pending action against the grantor must undergo especially careful scrutiny. Gurley v. Blue Rents, Inc., 383 So.2d 531, 535 (Ala.1980).
It is undisputed that the “debt” owed to Robert and Dorothy Welch antedated the conveyance at issue. As the Court noted in Granberry v. Johnson, 491 So.2d 926, 928 (Ala.1986):
“The debtor-creditor relationship is created not by a judgment, but by the wrong which produces the injury; and it is the date of the wrongful act, not the date of the filing of the suit or of the judgment, which fixes the status and rights of the parties. [Roddam,] 285 Ala. at 622, 235 So.2d at 656. Hence, a tort claimant is a creditor, and the alleged tortfeasor is the debtor. See also Pope v. Payne, 289 Ala. 203, 266 So.2d 761 (1972).”
The altercation between Robert Welch and Fred Graham occurred on October 16, 1985. Fred Graham’s disputed conveyance of his one-half interest in the Conger Road property was executed on October 18, 1985, two days later.
In order to prove constructive fraud, the Welches must prove that Fred Graham conveyed his one-half interest to his wife for less than adequate consideration. As the Court stated in Southern Slag Products Co. v. Thomas, 413 So.2d 1073, 1076 (Ala.1982):
“In order to meet the requisite burden of proof, the grantee/spouse is not limited to showing that the consideration that actually passed was sufficient, but may also present evidence of circumstances, salaries, financial. contributions from other sources and relevant matters tending to prove that the ownership which was transferred was supported by adequate consideration. The grantee/spouse may present evidence tending to show that the original interest owned by the husband was a mere convenience and that the grantee/spouse initially purchased the property with funds from her own separate estate.”
In this case, the Grahams made a prima facie showing that the conveyance was based upon adequate consideration. The undisputed testimony of the Grahams reveals that, as consideration for the conveyance, Geneva Graham gave Fred Graham $10,000 to be used to pay his legal fees. These legal fees were for Fred’s defense in criminal proceedings related to the altercation with Robert Welch. It is also undisputed that the majority of the $10,000 paid by Geneva to Fred came from a certificate of deposit that was owned solely by Geneva Graham. In addition, the undisputed testimony of the Grahams revealed that Geneva Graham made the payments on the Conger Road property from 1968 to 1978. These facts, coupled with the joint bid made on the house by the Grahams in 1978 and the use of the resulting jointly payable insurance proceeds related to the property indicate clearly that Geneva Graham paid adequate consideration for her husband’s interest in the property.
In this case, the trial court properly entered the summary judgment, because, once the Grahams made a prima facie showing that the elements necessary to set aside the conveyance as fraudulent were missing, the Welches presented no substantial evidence of any attempt on the part of the Grahams to avoid payment to the Welches, as judgment creditors. The sole fact relied on by the Welches to support their claim is that the conveyance took place two days after the altercation between Fred Graham and Robert Welch. However, the Grahams both testified that they did not anticipate the resulting civil litigation at the time of the convey-, anee. In fact, the civil action brought by the *1031 Welches against Fred Graham as a result of the October 1985 altercation was not filed until 1987. Even though the altercation took place two days before the conveyance on October 18, 1985, the undisputed evidence was sufficient to support the summary judgment.
Based on the foregoing, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, STEAGALL, KENNEDY and INGRAM, JJ., concur.
ADAMS and HOUSTON, JJ., dissent.

. Because this action was not pending on June 11, 1987, Ala.Code 1975, § 12-21-12, mandates that the Welches (the nonmovants) meet their burden by "substantial evidence.” Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence test a nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).