**In re Steven R. SPEIR, Debtor.**

**Bankruptcy No. 94–03759–RCF–7.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

June 28, 1995.

Order Granting Reconsideration
July 28, 1995.

John Whittington, Birmingham, Alabama, for Debtor.

Thomas Reynolds and Scott Williams, Birmingham, Alabama, for Trustee.

**ORDER DENYING THE TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT WITH STEVEN R. SPEIR AND DONNA C. SPEIR**

BENJAMIN COHEN, Bankruptcy Judge.

This matter is before the Court on the *Motion of Thomas E. Reynolds, as Trustee for the Bankruptcy Estate of Steven R. Speir, for Order Approving, Pursuant to 11 U.S.C. § 105 and Bankruptcy Rule 9019, Compromise and Settlement with Steven R. Speir and Donna C. Speir* and on an Objection to Motion filed by William D. Crawford. A hearing was held on February 6, 1995.[1] The Debtor Mr. Speir; his attorneys John P. Whittington and Jay Bender; the Trustee, Mr. Reynolds; R. Scott Williams, the Trustee's attorney; and Richard Kemmer, attorney for the objecting party William D. Crawford, appeared.

The matter was submitted on arguments of counsel, the pleadings, the testimony of Mr. Reynolds and the Debtor and on various exhibits admitted during trial. The parties submitted post-trial briefs which were considered. This matter was taken under advisement on March 7, 1995.

**Summary of Holding**

While the Trustee's proposed compromise and settlement satisfies three of the four criteria courts consider in deciding whether to approve such settlements, this Court finds that the proposed compromise and settlement does not satisfy the fourth criterion because the settlement is not in the paramount interest of the creditors and would not benefit this estate. The Trustee has no tangible interest in the property subject to the settlement and consequently the proposed compromise and settlement should not be approved.

**I. Findings of Fact**

The facts necessary to decide the matters before this Court, as the Court summarizes them from the pleadings and the testimony of the Trustee and the Debtor, are not in dispute.[2]

In 1988 the Debtor and two others formed Dove Coal Corporation.[3] Mr. William Crawford alleges that he became a creditor of the corporation during the time of its operation and possibly the Debtor as well. In 1991, after Mr. Crawford's creditor status allegedly arose, the Debtor transferred all of his interest in his home to his wife. Following the transfer, Mr. Crawford filed suit in state court for damages he alleged resulted from

---

1. The Motion was originally scheduled for a hearing on January 23, 1995. A hearing was held on that day and the Court entered an oral order granting the Motion. On January 24, 1995, Mr. Kemmer, attorney for Mr. Crawford, contacted the Court and advised that Mr. Crawford had not received notice of the hearing on the Motion and that Mr. Crawford was objecting to the settlement and would file such an objection. The objection that is the subject of the matters now before the Court was filed on January 26, 1995. On January 27, 1995, the Court entered an Order Vacating Oral Order on *Motion of Thomas E. Reynolds, as Trustee for the Bankruptcy Estate of Steven R. Speir, for Order Approving, Pursuant to 11 U.S.C. § 105 and Bankruptcy Rule 9019, Compromise and Settlement with Steven R. Speir and Donna C. Speir.* The vacating order was based on the failure of the Court to provide proper notice of the Trustee's motion to all creditors. The February 6 hearing was scheduled after which the Trustee filed a response to the objection to the settlement.

2. The facts necessary to resolve the ultimate issue separating these parties were neither presented to nor requested by the Court. Those include the facts surrounding the Debtor's alleged fraudulent transfer of his home to his wife and the facts that form the basis of the objecting party's claim against the Debtor.

3. Dove Coal Corporation subsequently filed for bankruptcy in this Court. The undersigned judge was at the time of that filing technically a party in interest in that case because I was the United States Bankruptcy Administrator for the Northern District of Alabama. Neither chapter 7 asset cases nor chapter 11 cases filed before November 8, 1993, the date of my appointment to the bankruptcy bench, have been assigned to me because of my former position. While the instant case is not included in that category, it is tangentially related to the Dove Coal filing. For that reason I must disclose this prior relationship; however, because of my limited personal knowledge of the prior case and because of the lack of influence that the prior case would have on the instant case, I am of the opinion that the prior association is meaningless. If any interested party disagrees however, that party may formally ask the Court to consider this issue.

his association with Dove Coal Corporation. The Debtor, along with the corporation and two others, were named defendants. In 1992 a judgment was entered against all defendants. The judgment was recorded in 1993. In 1994 Mr. Crawford filed suit in state court seeking to set aside, as a fraudulent transfer, the Debtor's transfer of his home to his wife. The Debtor filed the instant case on June 28, 1994. On December 16, 1994, the trustee filed his settlement motion with the Court.

The settlement among the Debtor, his wife and the Trustee was produced through arms' length negotiations. The settlement provides that the Trustee will receive from the Debtor and his wife a total of $12,000.00 for the estate. Upon that payment the Trustee would release the Debtor and his wife from all possible actions. The settlement proposes that once the agreement is signed the Trustee would intervene in Mr. Crawford's pending fraudulent transfer action, be substituted as the proper party and would then cause the suit to be dismissed with prejudice.

The parties agree that the property involved had an approximate value of $256,000.00 at the time of the conveyance.[4] The amount of Mr. Crawford's judgment is $275,000.00.[5] The settlement provides $12,000.00 for the Debtor's estate. The parties to the settlement arrived at the amount of $12,000.00 by beginning with an assignment to the home of .a value of $256,000.00. The Trustee testified that the cost to sell the property would be approximately $6,000.00, that a realtor's sales commission would be about $20,000.00, and that the mortgage balance on the home was $150,000.00. Subtracting those figures from the homes's value leaves $80,000.00 in realizable equity. The debtor's interest in the home would be one-half of that equity or about $40,000.00. The Trustee deducted $20,000.00 from that interest as repayment of a loan from the Debtor's wife leaving an equity amount for the estate of $20,000.00. Because the Debtor's homestead is worth $5,000.00, the estate has a potential recovery of $15,000.00. The trustee estimates litigation costs to be $3,000.00. The resulting amount is $12,000.00.

## II. Contentions of the Parties

The Trustee contends that not only have all criterion been met to satisfy recognized tests for approving settlements but also that once a chapter 7 bankruptcy is filed, pursuant to sections 541 and 544 through 551 of the Bankruptcy Code, "[a]ll avoidance actions regarding transfers of the debtor's property interests become the property of the debtor's estate, and the trustee assumes sole authority on behalf of the debtor's estate to pursue causes of action related to any alleged avoidable transfer." Brief of Thomas E. Reynolds, as Trustee, and the Debtor Steven R. Speir in Support of Trustee's Motion to Approve Compromise and Settlement at 11. The objecting party, Mr. Crawford contends that the settlement does not meet the recognized tests but more strongly contends that notwithstanding the intervening bankruptcy, the Trustee does not have the authority to compromise a fraudulent conveyance action that is the potential interest of Mr. Crawford.

## III. Conclusions of Law

■ The parties agree, and this Court agrees with them, that this Court must consider certain criterion in deciding whether to approve the compromise and settlement.[6] Those criteria are:

(1) The probability of success in the litigation;

(2) The difficulty, if any, to be encountered in the matter of collection;

---

4. The Trustee bases his opinion on a tax assessor's assessment. Mr. Crawford agrees in his Memorandum in Support of Objection that the property has been valued from between $256,000.00 and $300,000.00. Many courts have decided the issue of "at what time" value is established for purposes of a transfer. Because the parties generally agree on the value, this Court need not consider that issue.

5. What portion of that amount would be attributable to the Debtor was not explained. The Trustee's testimony however that there is little if any equity in the property would discount an argument that Dove Coal Corporation may pay the judgment thus leaving the Debtor's estate free to enjoy the benefit of the settlement.

6. The courts of this circuit apply a rendition of the four announced in *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir.1929).

(3) The complexity of the litigation involved, and the expense, inconvenience and delay necessary attending it; and,

(4) The paramount interest of the creditors and a proper deference to their reasonable views and the premises.

*In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir.1990), *cert. denied sub nom. Wallis v. Justice Oaks II, Ltd.,* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990).

■ If the Trustee had any tangible interest in the property subject to the settlement that could yield a benefit to this estate or if the objecting creditor were an unsecured creditor rather than a secured one, this Court would find that the compromise and settlement should be approved. This Court finds, however, that the Trustee does not have such an interest. Only three of the above criteria have been met. It can be said in favor of the settlement that the Trustee demonstrated that: (1) if the Trustee were to prosecute any action against the Debtor involving the transfer of property to the Debtor's wife that there is the possibility that the trustee would lose the litigation; (2) if such an action were brought that it would in all respects be complex; (3) and that, the expense and delay in bringing such an action would be substantial. This Court cannot find, however, that the recovery provided for the Trustee in the settlement would yield any benefit to the estate as the Trustee would not be able to assert an interest to that recovery that would be superior to or in excess of the interest of Mr. Crawford; consequently, the fourth criterion, that the settlement is in the paramount interest of the creditors, is not satisfied.

### A. Fourth Criterion: Paramount Interest of Creditors

If the Debtor's property transfer is not a fraudulent transfer, the property belongs to the Debtor's wife, is not property of the estate and the trustee has no rights to the property. If the transfer is a fraudulent transfer, the objecting creditor becomes, under Alabama law, a judgment lien creditor with rights superior to those of the Trustee. In either case, the Trustee has no tangible interest in this property.[7]

In his reply brief the Trustee argues:

In the Crawford Memorandum, Crawford asserts that he holds a judgment lien on all property of the Debtor located in Jefferson County, Alabama by virtue of the recordation of his judgment on November 8, 1993. Crawford further asserts that the recordation of the judgment created a lien on the Debtor's interest in lot 8, survey of Thorn Hill (the "Speir Home"). The Crawford Memorandum, however, acknowledges that the Debtor had no interest in the Speir Home when Crawford recorded his judgment or at any subsequent time. As paragraph 4 of the Crawford Memorandum concedes, the Debtor conveyed all of his interest in the Speir Home well before Crawford recorded his judgment. A lien cannot attach to property in which the judgment debtor has no interest. Because the Debtor transferred all his interest in the Speir Home prior to Crawford's recording his judgment, Crawford does not have a valid judgment lien on the Speir Home.

Reply Brief of Thomas E. Reynolds, as Trustee, and the Debtor Steven R. Speir in Support of Trustee's Motion to Approve Compromise and Settlement at 1–2.

■ But for a long recognized and still applicable exception to the general rule on which the Trustee relies, this Court would agree. A 1944 opinion of the Supreme Court of Alabama explains:

The principle is well sustained that in general a creditor of a bankrupt cannot after bankruptcy maintain an action to set aside a fraudulent conveyance made by the bankrupt; and that after the appointment of a trustee, he alone may do so, though the conveyance was executed more than four months before the bankruptcy.

.    .    .    .    .

7. The parties agree that Mr. Crawford's "judgment" exceeds the value of the settlement amount allowed the estate. Of course the parties

do not agree that there is a judgment that should be compared to the settlement amount.

But a different rule obtains when the creditor has a lien on the grantor's property created more than four months before bankruptcy (11 U.S.C.A. § 107, sub. f), and his right to set aside the fraudulent conveyance is in furtherance of his enforcement of that lien. When so, the bankrupt proceedings do not cut off that right and a discharge in bankruptcy is not effective to that extent, but the trustee may intervene in such suit, if desirable, to protect the interest of the estate. And that effect has been given to a judgment lien.

*Rowe v. Bonneau–Jeter Hardware Co.*, 245 Ala. 326, 330, 16 So.2d 689 (1944) (citations omitted).

■ The above exception clearly diminishes any claim the Trustee may have had to the Speir home, especially when it is considered in conjunction with the unambiguous law in Alabama described below, that is, that it is not the time of a transfer, the time of an awarding of a judgment or the time of the recordation of a judgment that fixes the time for establishing the parties' relationships in an alleged fraudulent transfer matter, but it is the *date of the act giving rise to a creditor's claim* that determines the time of consideration.[8]

### B. Date of the Act Giving Rise to the Creditor's Claim

■ In an alleged fraudulent transfer situation the Supreme Court of Alabama has interpreted the precursor to the Alabama Uniform Fraudulent Transfer Act, §§ 8–9A– 1 through 8–9A–12 to establish that, "[t]he debtor-creditor relationship is created not by a judgment, but by the wrong which produces the injury; and it is the date of the wrongful act, not the date of the filing of the suit or the judgment, which fixes the status and rights of the parties." *Granberry v. Johnson*, 491 So.2d 926, 928 (Ala.1986); *Roddam v. Martin*, 285 Ala. 619, 622, 235 So.2d 654 (1970). In this alleged fraudulent transfer situation, if a court finds that the transfer was not wrongful as of the date of the Debtor's transfer of property to his wife, and thus not a fraudulent transfer, the Trustee would have no interest in the property as all rights would vest in the Debtor's wife.[9] On the other hand, if a court finds that the transfer was wrongful as of the date of the Debtor's transfer of property to his wife, and thus a fraudulent transfer, under Alabama law William Crawford's judgment lien would attach to the property and is superior to any claim of the Trustee in both time and amount. In either event there could be no benefit to this estate from any action the Trustee could take in regards to the matter before this Court.[10]

Arguments similar to those raised by the Trustee have been raised before but were rejected by the Supreme Court of Alabama. In *Almon v. Byrd*, 336 So.2d 183 (Ala.1976) the complaining party argued that "the filing of the judgment with the probate judge is a circumstance constituting the alleged fraud...." *Id.* at 184. The court's opinion addressed this argument by stating, "Defendants cite no authority to support this propo-

---

**8.** "The law of the state where the property is situated governs the validity, nature and effect of a lien on the property of a bankrupt." *In re Computer Room, Inc.*, 24 B.R. 732 (Bankr. N.D.Ala.1982) (citing *Meyer v. United States*, 375 U.S. 233, 238, 84 S.Ct. 318, 321–22, 11 L.Ed.2d 293 (1963)); *Beall v. Pinckney*, 150 F.2d 467, 469–470 (5th Cir.1945); *In re Miller*, 148 B.R. 510, 517 (Bankr.N.D.Ill.1992) (("While federal law determines what constitutes property of the estate, state law determines the debtor's interest in specific property") (citing *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988))).

**9.** The elements of a fraudulent transfer in Alabama are explained as:

[A]s the Court stated in *Roddam v. Martin*, 285 Ala. 619, 623, 235 So.2d 654, 657 (1970), under the statute the concurrence of three elements is required before a conveyance can be declared fraudulent: (1) that the creditor was defrauded; (2) that the debtor intended to defraud; and (3) that the conveyance was of property out of which the creditor could have realized his or her claim or some portion of it. *Welch v. Graham*, 623 So.2d 1027, 1029 (Ala. 1993).

**10.** Because the law in Alabama is clear that neither the date of filing an action attacking a transfer as fraudulent nor the date of obtaining a judgment in such an action is relevant to a consideration of the date the status and rights of parties to such actions, the parties' arguments regarding the time of establishment of a judgment or a lien are irrelevant.

sition, but seem to assume that a creditor must have an established lien before he can seek relief for a fraudulent conveyance. *That assumption is not the law in Alabama. Id.* (emphasis added). After quoting then section 7 of title 20 of the Code of Alabama, the court remarked, "An action to set aside a fraudulent conveyance may be brought even though the debt, claim, or demand has not been reduced to a judgment. *Roddam v. Martin,* 285 Ala. 619, 622, 235 So.2d 654 (1970). *Would the rights of a creditor be diminished because he has reduced his claim to a judgment?* Clearly not." *Id.* at 185 (emphasis added). The court recognized that a creditor without a lien includes a judgment creditor without a lien, citing *Wooten v. Steele,* 109 Ala. 563, 565, 19 So. 972 (1896) and that the statute allowing such a recognition, then section 897 of title 7 of the Code of Alabama, has been applied to actions to set aside fraudulent conveyances. The court concluded this point by stating:

> These authorities would seem to make it clear that a judgment creditor need not have an established lien before he can bring an action to set aside a fraudulent conveyance. *If the law were to the contrary, a judgment debtor could always prevent his judgment creditor from subjecting his property to payment of the debt by conveying it before the judgment creditor filed his judgment.* Since having a lien is not a condition precedent to a judgment creditor's bringing an action to set aside a fraudulent conveyance, *the acquisition of a lien by filing the judgment is not a circumstance constituting fraud* which needs to be stated with particularity.

*Id.* at 185–186 (emphasis added). This reasoning, in combination with the holding pronounced in *Granberry v. Johnson,* fixes the date giving rise to a creditor's right in Alabama to seek to set aside a fraudulent transfer, as the date of the wrongful act that gives rise to those rights. And as to the time of establishment, that right is unaffected by whether the creditor has reduced the claim to judgment, filed that judgment with the probate court or has established a lien on the property subject to the alleged fraudulent transfer.

■ · In the instant case, Mr. Crawford's rights are unaffected by any formalized interest he may have had in the Speir home when he recorded his judgment. The fact that the Debtor conveyed all of his interest in the home before Mr. Crawford recorded his judgment, is exactly the circumstance the Supreme Court of Alabama recognized in *Almon v. Byrd* and dismissed. Mr. Crawford's secured status relates back to the date of the wrongful act. If he becomes a secured lienholder at any time after the wrongful act, he becomes a secured lienholder from the time of the wrongful act.

■ While the Trustee is correct that a lien cannot attach to property on which a judgment creditor has no interest, the situation of an alleged fraudulent transfer is a solid exception to that general rule. The status and rights of the parties to this matter; Mr. Crawford, Mr. Speir, Ms. Speir and now the Trustee, were fixed on the date of Mr. Speir's alleged wrongful act against Mr. Crawford. The intervening bankruptcy does not and cannot change those rights. If a court determines that the transfer of the Speir home was fraudulent, those rights are revived as if occurring on the date the decision establishing the transfer as fraudulent was rendered.

### C. Crawford's Interests Would Be Superior to the Trustee's

■ If there were a fraudulent transfer, William Crawford's interest would be superior to any interest the Trustee obtained at the time the bankruptcy was filed, thus precluding the Trustee from realizing any tangible benefit. Section 544 of the Bankruptcy Code invests the Trustee with the status of a hypothetical lien creditor. Unlike the status bestowed on a creditor by the Alabama Uniform Fraudulent Transfer Act which relates status back to the date of a wrongful act, the status given a trustee under section 544 arises only upon the filing of the bankruptcy and in the case of a secured creditor cannot relate back to the date of the wrongful act against the creditor. The Trustee cannot stand in the shoes of a secured creditor attempting to set aside a fraudulent transfer. An opposite result may of course exist in the

situation of an unsecured creditor's attempting to do the same.

The Trustee relies on the Court of Appeals for the Fifth Circuit opinion from *Carlton v. Baww, Inc.*, 751 F.2d 781 (5th Cir.1985). The circuit court relied on *In re MortgageAmerica Corporation*, 714 F.2d 1266 (5th Cir.1983) in deciding *Carlton.* Both cases held that the right to recover the property of a fraudulent transfer vested in a bankruptcy trustee on the date of the filing of the bankruptcy and that the future of the suit to avoid the transfer was within the control of the bankruptcy court. *Carlton* at 785; *MortgageAmerica* at 1275. Neither case involved a secured creditor. The creditor in *Carlton* was the plaintiff in a wrongful death action against the transferor. The creditor in *MortgageAmerica* was a bank attempting to enforce a verdict on MortgageAmerica against an officer of MortgageAmerica. In those cases the trustees had interests that could benefit the estates. Here there is no such interest. *See, In re Miller,* 148 B.R. 510 (Bankr.N.D.Ill.1992) distinguishing *MortgageAmerica* from situations under Illinois fraudulent transfer law.

In a case similar to the instant one, where a preference action was alleged, Chief Judge William Altenberger writing for the Bankruptcy Court for the Central District of Illinois explained the court's ruling that the trustee was not entitled to recover under section 550, because any recovery the trustee would receive would not benefit the estate. He wrote:

> This court holds that such an avoidance and recovery of property by the trustee is not equivalent to a postpetition acquisition of property by the estate as contemplated by 11 U.S.C. §§ 552(a) or 541(a)(7). It is this court's opinion that the estate's interest in the transferred property was acquired upon commencement of the case. 11 U.S.C. § 541(a)(3). The transferee merely held voidable title to the transferred property. See 11 U.S.C. § 548(c). The successful exercise of the trustee's avoiding power causes the affected transfer to become void, allowing the trustee to recover the property under 11 U.S.C. § 550. Any property recovered by the

trustee was subject to [the creditor's] security interest at the time the debtor transferred the property to [the pawnbroker] and continued in the property after the transfer.

In summary, where a secured creditor has an independent claim against a third party to recover property transferred by a debtor to the third party, that claim cannot be cut off by a trustee's exercise of the Code's avoiding powers to recover the property and will have priority over a trustee's claim to the property arising out of the exercise of the avoiding powers.

*In re Pearson Industries, Inc.*, 178 B.R. 753, 764 (Bankr.C.D.Ill.1995).

## D. Trustee Is Unsecured Creditors' Representative

While a trustee technically represents all creditors, secured as well as unsecured, a trustee "primarily represents the unsecured creditors, and represents the secured creditors only in his capacity as a custodian of the property upon which they have a lien." *Ford Motor Credit v. Weaver,* 680 F.2d 451, 462 (6th Cir.1982) ((quoting *In re Nadler,* 8 B.R. 330, 333 (Bankr.E.D.Pa. 1980)) (quoting *In re American Fidelity Corp.*, 28 F.Supp. 462, 471 (S.D.Cal.1939))); *In re J.J. Tyne,* 261 F.2d 249, 251 (7th Cir.1959); *In re 680 Fifth Avenue Associates,* 154 B.R. 38, 43 (Bankr.S.D.N.Y.1993); *In the Matter of CD Electric Company, Inc.,* 146 B.R. 786, 788 (Bankr.N.D.Ind.1992); *In re Center Teleproductions, Inc.,* 112 B.R. 567, 579 (Bankr.S.D.N.Y.1990); *In re Peckinpaugh,* 50 B.R. 865 (Bankr.N.D.Ohio 1985); *In re Computer Room, Inc.,* 24 B.R. 732 (Bankr.N.D.Ala.1982). As a custodian, the Trustee may not compromise the secured creditor's lien, unless of course the creditor consents.

## IV. Conclusion

A trustee must be allowed to exercise authority to avoid fraudulent transfers. This opinion and order do not modify that authority. But neither can this opinion and order modify the state law rights of this secured creditor. There are fortunately no competing interests here. The Trustee exercises

his rights in favor of unsecured creditors. The secured creditor exercises his rights independent of the Trustee.

For the reasons stated above, the Court finds that the *Motion of Thomas E. Reynolds, as Trustee for the Bankruptcy Estate of Steven R. Speir, for Order Approving, Pursuant to 11 U.S.C. § 105 and Bankruptcy Rule 9019, Compromise and Settlement with Steven R. Speir and Donna C. Speir* is due to be denied.

### Order

It is therefore **ORDERED** that the *Motion of Thomas E. Reynolds, as Trustee for the Bankruptcy Estate of Steven R. Speir, for Order Approving, Pursuant to 11 U.S.C. § 105 and Bankruptcy Rule 9019, Compromise and Settlement with Steven R. Speir and Donna C. Speir* is **DENIED.**

## ORDER ON JOINT MOTION TO RECONSIDER ORDER DENYING TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT WITH STEVEN R. SPEIR AND DONNA C. SPEIR

This matter is before the Court on the *Joint Motion for Reconsideration* of this Court's *Order Denying the Trustee's Motion to Approve Compromise and Settlement with Steven R. Speir and Donna C. Speir* entered on June 28, 1995. A hearing was held on July 24, 1995. The Debtor's attorney, Mr. Jay Bender; the Trustee's attorney, Mr. R. Scott Williams; and Mr. Richard Kemmer, attorney for the objecting party William D. Crawford, appeared.

The matter was submitted on arguments of counsel, the pleadings, the testimony and exhibits admitted during trial, and on post-trial briefs.

For the reasons expressed below, the Court finds that the *Joint Motion for Reconsideration* should be granted but that the order entered on June 28, 1995 should stand.

While the Movants agree with the facts as set out in the Court's order, they contend that the Court misinterpreted the law in the area relating to this matter. The foundation of this Court's ruling is the consistent holdings of the Supreme Court of Alabama that a "debtor-creditor relationship is created not by a judgment, but by the wrong which produces the injury; and it is the date of the wrongful act, not the date of the filing of the suit or the judgment, which fixes the status and rights of the parties." *Granberry v. Johnson,* 491 So.2d 926, 928 (Ala.1986); *Roddam v. Martin,* 285 Ala. 619, 622, 235 So.2d 654 (1970). The reason for the application of this principle in cases involving alleged fraudulent transfers is, as the Supreme Court of Alabama explained, "If the law were to the contrary, a judgment debtor could always prevent his judgment creditor from subjecting his property to payment of the debt by conveying it before the judgment creditor filed his judgment." *Almon v. Byrd,* 336 So.2d 183, 185–186 (Ala.1976). In following these holdings, this Court concluded that the recovery of the transferred property by the Trustee would be subject to a secured creditor's interest on that property at the time the Debtor transferred the property and would continue in the property after the transfer. *See In re Pearson Industries, Inc.,* 178 B.R. 753, 764 (Bankr.C.D.Ill.1995). Consequently, until a determination is made as to whether Mr. Crawford is a secured creditor, a status that relates back to the date of the wrongdoing, in this case a date before the property was transferred, the Trustee should not be allowed to compromise the potential rights of Mr. Crawford. The rights given the Trustee by the Bankruptcy Code would be, by statute, inferior to those of Mr. Crawford, and the Trustee would have no interest in the property. Similarly, if Mr. Crawford is not a secured creditor because a court finds that there was no fraudulent transfer, the Trustee has no interest in the property as Mr. Speir's non-debtor, transferee-wife would be the owner of the property.

If the Trustee has the right to compromise a secured creditor's interest in a fraudulent transfer context, the Trustee would have the same rights in other secured contexts. This Court cannot agree that the Bankruptcy Code grants such powers.

For the reasons stated above, the Court finds that the Joint Motion for Reconsideration should be granted but that the Court's order of June 28, 1995 should stand.

### Order

It is therefore **ORDERED** that:

1. The *Joint Motion for Reconsideration* is Granted; but,

2. The Court's *Order Denying the Trustee's Motion to Approve Compromise and Settlement with Steven R. Speir and Donna C. Speir* stands.