**Charles S. GIFFIN, Appellant–Plaintiff,**

**v.**

**George C. EDWARDS, Mark C. Edwards, and Diane L. Jensen, Appellees– Defendants.**

**No. 02A03–9806–CV–261.**

Court of Appeals of Indiana.

Feb. 25, 1999.

M. Scott Hall, Mark S. Kittaka, Barnes & Thornburg, Fort Wayne, Indiana, for appellant.

Grant F. Shipley, Shipley & Associates, Fort Wayne, Indiana, for Mark C. Edwards.

Diane L. Jensen, Pavese, Garner, Haverfield, Dalton, Harrison & Jensen, L.L.P., Fort Myers, Florida, for Diane L. Jensen.

BAKER, Judge.

This case concerns questions of the interrelationship of state law and bankruptcy law, and the proper methods, under Indiana law, for obtaining a lien on real estate where the real estate has been conveyed to a third party, the creditor obtains a money judgment against the transferor/debtor and brings an action for fraudulent conveyance, and the transferor/debtor then files for bankruptcy. Appellant-plaintiff Charles S. Giffin appeals from the trial court's ruling which dismissed Giffin's action for fraudulent conveyance and substituted the bankruptcy trustee as plaintiff in that action.

## FACTS[1]

This case stems from a suit brought by Charles F. Giffin for fraudulent conveyance against George C. Edwards (George) and Mark C. Edwards, (Mark), George's son. The conveyance occurred in 1973, when George gave Mark title to the Steuben County real estate in question, reserving for himself a life estate, and in 1979, when George released his life estate by quit-claim deed to Mark. The quit-claim deed was not recorded until February, 1986.

Giffin obtained a money judgment of $188,240 against George in October, 1987 in Steuben County Circuit Court. Subsequently, Giffin brought his suit for fraudulent conveyance on October 12, 1988. George filed Chapter 7 Bankruptcy in Florida in April, 1989. A March 1997 order of the Allen Superior Court[2] (trial court) found that Giffin's judgment was entered and indexed on the judgment docket of the clerk of the Steuben Courts prior to George's bankruptcy filing. R. at 35. A notice of automatic stay was filed on April 24, 1989, pursuant to 11 U.S.C. § 362,[3] and proceedings in this action were stayed. The original bankruptcy trustee died thereafter without having administered the fraudulent transfer action, and the bankruptcy case was closed.

A series of rulings ensued, issued by both the trial court and the United States Bankruptcy Court for the Middle District of Florida (bankruptcy court), as Giffin sought to bring his fraudulent conveyance action. Specifically, on August 16, 1991, the bankruptcy court held that the *in rem* action by Giffin did not violate either the automatic stay provisions or the permanent injunction provisions of the United States Bankruptcy Code and was proper. Subsequently, the trial court, in an order dated June 2, 1994, found that Giffin had a cause *in rem* which he could pursue even after post-bankruptcy discharge because no one had challenged, avoided or set aside Giffin's money judgment, judgment lien, or lis pendens in the bankruptcy court. However, the trial court held that Giffin's lis pendens notice alone was "merely notice that a right to perfect a lien exists, [citations omitted] and unless and until Giffin obtains judgment against George and Mark in the instant cause of action, Giffin's Lisa [sic] Pendens Notice neither amounts to, nor rises

---

1. Oral argument was heard on February 8, 1999. The bankruptcy trustee was not represented at the argument.

2. Venue of this case was changed to the Allen County Circuit and Superior Courts on March 6, 1989.

3. Title 11 U.S.C. § 362 provides for a stay, after bankruptcy is filed, of:

   "(a)(1) the commencement or continuation ... of a judicial ... action or proceeding against the debtor that was ... commenced before the commencement of the case under this title...."

to the level of, a specific and perfected lien against the [real estate at issue.]" R. at 32–33.

The bankruptcy case was re-opened on March 6, 1995, and a new trustee, Diane Jensen (Trustee), was subsequently appointed. On October 30, 1996, the bankruptcy court held that the Trustee was the proper plaintiff in the fraudulent conveyance suit. It also approved a settlement between Mark and the Trustee, and further held that Giffin did not possess a valid, enforceable lien against the property at issue because the lis pendens notice did not create a lien and the fraudulent transfer action was unresolved. R. at 56. The Trustee then moved the trial court for an order substituting herself as the plaintiff in the fraudulent conveyance case. On March 12, 1997, the trial court entered an order denying substitution of the Trustee. R. at 35. It also found that, although the lis pendens notice did not create a perfected lien, Giffin's judgment nonetheless accorded him a lien on the real estate, under Indiana law in effect at the time, because his judgment was entered and indexed in the Steuben County judgment docket. R. at 38.

On June 11, 1997, the bankruptcy court further clarified its prior orders and issued its final order, which Giffin did not appeal. R. at 185. In its final order, the bankruptcy court confirmed that the fraudulent transfer action "uniquely and exclusively belonged to the bankruptcy estate" and thus no one except the Trustee was authorized to pursue it. R. at 185. However, it also vacated the portion of its previous order making "any determination or finding as to Giffin's Indiana state law lien rights." The bankruptcy court concluded: "If under applicable Indiana law, Giffin had a valid, vested lien right, he may institute a foreclosure action to enforce his lien right against the subject property in compliance with applicable local law, provided, however, he has no right to the fraudulent transfer action pending and no right to obtain either a money judgment against George C. Edwards or a decree ordering Edwards to reconvey the property." R. at 186.

Thereafter, Mark filed a motion to dismiss in the trial court. Supplemental R. at 139.

At the same time, Giffin filed a designation of pleadings in opposition and the Trustee filed a new notice of substitution of plaintiff. R. at 120, 123. On March 4, 1998, the trial court ordered The Trustee substituted as party plaintiff, and dismissed the suit with prejudice to Giffin. Giffin filed a motion to correct errors, which the trial court denied on April 29, 1998. Giffin now appeals.

### ISSUES

Giffin raises six issues of which we find two closely related issues to be dispositive: whether the trial court erred in dismissing Giffin's fraudulent conveyance action and whether it erred in approving the substitution of the trustee as party plaintiff. Specifically, Giffin asserts that Indiana case law and statutes regarding liens support his right to the fraudulent conveyance action. Furthermore, he maintains that, because he has a right to bring the action, the trustee was erroneously substituted as plaintiff.

### A. Indiana Precedent Regarding Lien Rights

Giffin argues that, under Indiana case law and under statutes in effect when he brought the action in fraudulent conveyance, he had an equitable lien on the real estate in question. Giffin argues that long-standing Indiana case law recognizes that an action in fraudulent conveyance is not separate from a plaintiff's judgment but rather acts as an "equitable equivalent of proceedings supplemental." Appellant's reply brief at 7. See Beavans v. Groff, 211 Ind. 85, 5 N.E.2d 514, 516 (1937).

Giffin further argues that the money judgment he obtained, under statutes then in effect, created a judgment lien against property in the county where it was liable to execution. IND.CODE §§ 34-1-45-1, -2. In addition, Giffin notes that the trial court previously found that Giffin had a judgment lien on the property in question before the date of George's bankruptcy petition filing because he had indexed and entered the judgment on the county docket where the property was located. R. at 38.

We note initially that I.C. §§ 34-1-45-1 and -2 were in effect at the time Giffin

filed his action.[4] I.C. § 34–1–45–1 provided that: "The following real estate shall be liable to all judgments and attachments, or to be sold in execution against the debtor owing same: ... Land fraudulently conveyed with intent to delay or defraud creditors...." I.C. § 34–1–45–2 provided that: "All final judgments for the recovery of money or costs in the circuit court and other courts of record of general jurisdiction ... shall be a lien upon real estate ... liable to execution in the county where, and only where, such judgment has been duly entered and indexed in the judgment docket...."

Secondly, case law supports the view that Giffin's filing of the fraudulent conveyance action was sufficient to create an equitable lien on the property in question pending a determination of his action. See *Beavans*, 5 N.E.2d at 516. In *Beavans*, a creditor obtained a money judgment against several defendants and then discovered that the defendants had transferred their property to their respective spouses. The creditor then brought fraudulent conveyance actions, which the court found were not separate from the plaintiff's judgment but rather extensions of that judgment. Our supreme court observed that the creditor/plaintiff's actions for fraudulent conveyance did not actually avoid the transfers but merely allowed the plaintiff to execute on his judgment. The effect of the fraudulent conveyance case, where the plaintiff prevails, is to "subject the property to execution as though it were still in the name of the grantor." *Id.* at 516–17.

■ Thus, despite its name, a fraudulent conveyance action in this context is not seeking to avoid the transfer. Instead, as our supreme court observed, "Such actions are in the nature of a judgment creditor's bill. [citations omitted]. They have for their sole purpose the removal of obstacles which prevent the enforcement of the judgment ... through the levy of execution." *Id.*

Furthermore, any concerns regarding notice are allayed because when Giffin brought his action, Mark was put on notice that Giffin had an equitable lien on the property. We note that this has been the long-standing rule in proceedings supplemental, and that this case is closely analogous to such actions. See *Johnson v. Naugle*, 569 N.E.2d 659, 661 (Ind. Ct.App.1991); *Radiotelephone Co. of Indiana, Inc. v. Ford*, 531 N.E.2d 238, 240 (Ind.Ct.App.1988) ("The rule today is the same as it has been for over one hundred years; a creditor acquires an equitable lien on funds owed by a third party to the judgment debtor from the time the third party receives service of process in proceedings supplemental.")

Thus, Giffin did all that he was required to do under the Judgment Lien statutes in effect. By indexing and docketing his judgment in the county where the real estate was subject to execution, and by bringing the fraudulent conveyance action before George filed his bankruptcy petition, Giffin acquired an equitable lien upon the real estate. I.C. § 34–1–45–2. The court erred in dismissing the case because Giffin had an equitable lien which gave him secured status conditioned on the successful completion of the fraudulent conveyance action. If our conclusion were otherwise, any debtor could fraudulently transfer property and then file for bankruptcy before his creditor received judgment on a fraudulent conveyance claim.

We conclude that, under relevant statute and case law, Giffin's timely initiation of his suit created an equitable lien, which will subject the real estate to execution if the fraudulent conveyance action is decided in his favor. See *Beavans*, 5 N.E.2d at 516–17. We emphasize that our finding is consistent with the bankruptcy court, which acknowledged that Giffin could pursue any lien rights he had under Indiana law. R. at 186.

**B.  Substituting Trustee as Plaintiff**

■ Giffin next argues that the trial court erred in ruling that the Trustee be substituted as the plaintiff in the fraudulent conveyance action. Specifically, Giffin maintains that he was the real party in interest in this case because he was the "true owner of the right sought to be enforced." *Hammes v.*

---

4.  I.C. §§ 34–1–45–1 was amended in 1994, when the Uniform Fraudulent Transfer Act was adopted. Under the amended statute, I.C. § 34– 55–9–1, execution laws no longer apply to lands fraudulently transferred.

*Brumley,* 659 N.E.2d 1021, 1030 (Ind.1995). His argument, once again, depends upon a premise which we have accepted above, namely that he was a secured creditor conditioned on his prevailing in the fraudulent conveyance action, and that he would thus trump the rights of the trustee.

In bankruptcy law, trustees have the right to administer fraudulent conveyance actions for the estate. 11 U.S.C. § 548. However, trustees stand in the shoes of unsecured creditors, not secured creditors. 11 U.S.C § 544(b).[5] Bankruptcy case law recognizes that:

> where a secured creditor has an independent claim against a third party to recover property transferred by a debtor to the third party, that claim cannot be cut off by a trustee's exercise of the [Bankruptcy] Code's avoiding powers to recover the property and will have priority over a trustee's claim to the property arising out of the exercise of avoiding powers.

*In re Speir,* 190 B.R. 657, 664 (Bankr. N.D.Ala.1995) (quoting *In re Pearson Indus., Inc.,* 178 B.R. 753, 764 (Bankr.C.D.Ill.1995)). Furthermore, there is wide agreement in bankruptcy case law that it is state law which determines the quality of lien rights and the procedures for obtaining lien rights. *See Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Meyer v. United States,* 375 U.S. 233, 238, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963); *In re Leonard,* 125 F.3d 543, 545 (7th Cir.1997).

In this case, Giffin has an interest different from that of the bankruptcy trustee, who only represents unsecured creditors. Due to his equitable lien, Giffin was a secured creditor under Indiana law conditioned on his prevailing in this action. His rights would then take priority over those of the trustee. For this reason, the trustee cannot be substituted for Giffin in this action.

Once again, we note that our ruling may be reconciled with the ruling of the bankruptcy court. The bankruptcy court ruled that Giffin could pursue any lien rights he had in Indiana and gave the fraudulent conveyance action to the trustee. Giffin acknowledges that even if he prevails in this action, he has no right to the value of the property which exceeds the amount of his judgment. This amount has always belonged to the trustee, representing unsecured creditors, and the bankruptcy court allowed her to settle that part of the fraudulent conveyance claim.[6]

We conclude that the trial court erred in substituting the trustee for Giffin in this action, and that the action must go forward. If Giffin prevails, the inchoate claim he now possesses will become a perfected lien, and he may execute upon his judgment under Indiana law. We thus reverse the trial court's substitution of the trustee and dismissal of Giffin's case and remand this cause to the trial court to determine whether the real estate in question was fraudulently conveyed.

Judgment reversed and cause remanded for trial.

GARRARD, J., and ROBB, J., concur.

---

**5.** 11 U.S.C. § 544(b) provides: "The trustee may avoid a transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim."

**6.** We note that the trustee and Mark settled the claim for $10,000 although the lakefront property was estimated to be worth $250,000–300,000.