This is an appeal from a judgment in the trial court denying plaintiff/creditor's request to have certain conveyances from a defendant/debtor/husband to his wife set aside as being fraudulent and made for the purpose of avoiding the satisfaction of a $19,312.03 debt.
The trial court made the following findings of fact and conclusions of law:
 "The Court finds from the evidence presented at the trial of this cause that the conveyances described in the pleadings and proof presented to the Court as having taken place from the Defendant, Lynn Edward Thomas, to the Defendant, Mary Anne Z. Thomas, were supported by a fair, adequate and valuable consideration given by the said Mary Anne Z. Thomas, and that such conveyances were not made by the parties Defendant for the purpose of hindering, delaying or otherwise preventing the party Plaintiff from collecting the indebtedness owed by the Defendant, Lynn Edward Thomas, to the Plaintiff, and accordingly, the Court finds that the Plaintiff has not been defrauded as a result of said conveyances of real property. The Court further finds that the Plaintiff has failed to meet its burden of proof to establish that there has been any other voluntary transfers of real and personal property by the Defendant, Lynn Edward Thomas, to the Defendant, Mary Ann Z. Thomas, without adequate and valuable consideration being given the same and such being made in an effort to hinder, delay or defraud existing creditors."
The appellee, in brief, stated substantial facts, which we, after examining the record on appeal, conclude were sufficient to support the trial judge's findings and conclusions:
 "Mr. and Mrs. Thomas were married on February 5, 1977. The three (3) lots in Woodland Forrest Subdivision were purchased in September of 1977 and title to the three (3) parcels of real estate was initially held by Lynn Edward Thomas and Mary Anne Z. Thomas, jointly with rights of survivorship. The lots were purchased at a price of Thirty-Two Thousand and 00/100 ($32,000.00) Dollars, divided into a Two Thousand Two Hundred and 00/100 ($2,200.00) Dollars cash down payment and the execution of a promissory note with a mortgage on the subject lots securing the remaining Twenty-Nine Thousand Eight Hundred and 00/100 ($29,800.00) Dollars. Mr. Thomas testified that the Two Thousand Two Hundred and 00/100 ($2,200.00) Dollars down payment for the lots came from wedding gifts to Mary Anne Z. Thomas from various members of her family. Mr. Thomas stated that a Five Thousand Five Hundred and 00/100 ($5,500.00) Dollars deposit was made in Mrs. Thomas' bank account on September 22, 1977 and that this money came from Mary Anne Z. Thomas' brother to be used by her for the down payment on the lots. He stated that he did not pay any consideration toward the purchase of the lots but, rather, that the consideration had all come from Mary Anne Z. Thomas by way of her family.
 "Mrs. Thomas testified that the money to purchase the lots `came from my family.' She stated that some of the money for the down payment came to her from her family at the time of her marriage to *Page 1075 
Lynn Thomas and the rest when she told her family she needed the money to buy the lots. The money from her family came to her in the form of a check made out to her only and Lynn Thomas' name was not included. In response to why title to the lots was taken jointly, Mrs. Thomas stated that the only reason was that she and Lynn Thomas were married. She stated that she and her husband had an understanding as to the lots which was that "They were my lots." She testified that this understanding was based on the facts that the down payment for the lots was coming from her via her family and that the mortgage payments to satisfy the remaining indebtedness were to be paid out of her income. All payments came out of her salary [$25,000 annually] regardless of who physically wrote the check. When asked whether she expected Lynn Thomas to pay her back for the consideration she was paying for the purchase of the real estate, Mrs. Thomas answered "No, because they were my lots."
 "Concerning the market value of the three (3) lots in question, Mr. Thomas stated that, though he had estimated them to be worth Fourteen Thousand and 00/100 ($14,000.00) Dollars, Fourteen Thousand and 00/100 ($14,000.00) Dollars and Sixteen Thousand and 00/100 ($16,000.00) Dollars respectively at the time of his deposition, he had formulated a revised estimate after investigating the matter further. Mr. Thomas went on to testify that his most recent estimate of the market value of the lots was Ten Thousand and 00/100 ($10,000.00) Dollars, Ten Thousand and 00/100 ($10,000.00) Dollars and Nine Thousand and 00/100 ($9,000.00) Dollars respectively.
 "Mr. Thomas testified that the house and lot involved in this action were purchased in May of 1979 and that record title to the property was initially held by Lynn Edward Thomas and Mary Anne Z. Thomas jointly with rights of survivorship. He testified that the house was purchased with a one hundred percent (100%) VA loan thereby taking advantage of his status as a veteran. Mr. Thomas went on to state that the monthly mortgage payments came out of his wife's income. Upon being called as a witness, Mrs. Thomas told the court that the only reason title to the house and lot was held jointly was to take advantage of Lynn Thomas' veteran's benefits in getting a one hundred percent (100%) VA loan and that she and Mr. Thomas had agreed to change it over to her name as soon as the VA requirements would allow it. As with the lots in question, Mrs. Thomas made all required mortgage payments on this property and all prepaid items and closing costs incurred by the Thomases as a result of the purchase of the house and lot were paid with money received from Mrs. Thomas."
Other testimony was introduced that Mrs. Thomas had stated to her husband as early as May, 1979, that she wanted to have the property transferred to her because she was making all the payments on the mortgages and had supplied the money for the down payment.
The couple maintained two joint bank accounts from which the various mortgage payments were made. Testimony was given at trial that Mr. Thomas primarily used an account in a Moundville bank and Mrs. Thomas primarily used an account in a Tuscaloosa bank, but that Thomas had written checks on and transferred funds deposited in the Tuscaloosa account.
Mr. Thomas is the president and majority stockholder of Southeastern Solar Systems of America (S.E.S.S.A.) which was incorporated in July of 1977. (At the time of trial, S.E.S.S.A. was no longer in operation and had not been served with notice of the suit. Therefore, S.E.S.S.A. is not a party defendant.) In the operation of his corporation, defendant had become indebted in the amount of $19,312.03 on an account with plaintiff Southern Slag Products Company under a personal guaranty to plaintiff on any and all debts of S.E.S.S.A.
On November 27, 1979, plaintiff sent Mr. Thomas a mailgram demanding full payment *Page 1076 
by December 1, 1979. On December 6, 1979, plaintiff's attorney wrote a letter to Mr. Thomas demanding S.E.S.S.A.'s outstanding balance to be paid within ten days. On December 27, 1979, Mr. Thomas's attorney replied that Mr. Thomas had a previous personal agreement with Southern Slag whereby all future orders placed by S.E.S.S.A. would be paid in full plus an amount equal to ten percent (10%) of the order placed, to be applied to the outstanding balance. Mr. Thomas's attorney stated that unless he heard from the plaintiff, that Mr. Thomas would continue to satisfy the debt according to the personal agreement. On December 28, 1979, Lynn Thomas conveyed all his interest in the four lots and one residence to Mary Anne Z. Thomas by quitclaim deeds. The stated consideration for each conveyance was $10.00.
On August 12, 1980, plaintiff recovered a judgment against defendant Mr. Thomas in the amount of $19,312.03 in the Circuit Court of Tuscaloosa County. Plaintiff then brought this suit to have the conveyances set aside as fraudulent under Code 1975, §8-9-6.
In Gurley v. Blue Rents, Inc., 383 So.2d 531 (Ala. 1980), this court was presented with an almost identical issue of an alleged fraudulent conveyance between a husband and wife. There, this Court stated:
 "In resolving this issue, we find it highly significant that we are dealing with a conveyance of real property between husband and wife, one of whom was in financial difficulty. Any time an alleged fraudulent conveyance involves a husband and wife, the approach which must be taken by the court is affected. Exactly how it is affected varies from state to state [In this regard see Annot. 35 A.L.R.2d 8 and 37 Am.Jur.2d Fraudulent Conveyances § 25 (1976)]. In Alabama, the fact that a conveyance took place between a husband and wife does not raise any presumption of fraud, nor does it represent a badge of fraud. Instead, it alters the scrutiny with which the court must consider the conveyance. In Umphrey v. Barfield, 238 Ala. 11, 13, 189 So. 64, 65 (1939), this Court reasoned that `. . . while this relationship [the husband-wife relationship] is not within itself a badge of fraud, "yet under all the authorities, supported by reason and common sense," transactions between persons occupying such relationship are to be jealously watched and must be subjected to closer scrutiny than would be required of a stranger.' Thus, the very fact that Mr. and Mrs. Gurley were the sole parties to the conveyance should have completely changed the way in which the trial court viewed the conveyance. It was essential that the conveyance be more closely scrutinized.
 "In addition, the relationship of the parties necessitated a shift in the burden of proof. This Court has held on numerous occasions that when a husband conveys certain property to his wife and that conveyance is attacked as a fraud on the husband's existing creditors, the wife bears the burden of proving that the conveyance was based upon a valuable consideration, substantial and not merely nominal. Smith v. Wilder, 270 Ala. 637, 120 So.2d 871 (1960); Dutton v. Lindler, 238 Ala. 363, 191 So. 210 (1939). The wife is thus laden with the initial responsibility of proving the bona fide character of the underlying transaction."
In order to meet the requisite burden of proof, the grantee/spouse is not limited to showing that the consideration that actually passed was sufficient, but may also present evidence of circumstances, salaries, financial contributions from other sources and relevant matters tending to prove that the ownership which was transferred was supported by adequate consideration. The grantee/spouse may present evidence tending to show that the original interest owned by the husband was a mere convenience and that the grantee/spouse initially purchased the property with funds from her own separate estate.
In this case, Mary Anne Thomas met the burden by testifying as she did at trial and in her sworn answers to interrogatories. Specifically, defendants answered plaintiff's interrogatories concerning the *Page 1077 
consideration paid for the transfer of the property from Mr. Thomas to Mrs. Thomas as follows:
 "Mary Anne Z. Thomas furnished all of the money at the time all of the real estate itemized above was purchased, and furnished all of the money for the payments that were required to be made on the mortgage indebtedness concerning the same."
As we have already stated, we have reviewed the evidence concerning the reason why the titles were originally transferred "jointly with right of survivorship." In resolving the issue presented, we have applied the rule that Mrs. Thomas, in this case, had the burden of proving that the conveyance was based upon a valuable consideration, substantial and not merely nominal. We have also applied the rule that "[w]here the trial court makes findings after hearing witnesses ore tenus, every presumption will be indulged in favor of the court's findings, and its findings will not be disturbed on appeal unless they are found to be palpably wrong." Russell v. Russell,361 So.2d 1053, 1054 (Ala. 1978); Gurley v. Blue Rents, Inc., supra.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.