YATES, Presiding Judge.
AuburnBank sued Teoples, Inc., Danny Peoples, and Denise Peoples, on March 29, 1999, alleging default on a promissory note and alleging that a conveyance of real property had been fraudulent, within the meaning of §§ 8-9A-4 and 8-9A-5, Ala. Code 1975. AuburnBank alleged in its complaint that Teoples had entered into a “floor-plan agreement” and had made to AuburnBank a promissory note, for the purpose of financing the purchase of used automobiles for Danny’s used car business, and it alleged that Danny had personally guaranteed the payment of the promissory note.[1] AuburnBank alleged that Danny had delivered to it a financial statement, which it said listed certain real property, in order to induce AuburnBank to approve the “floor-plan” agreement and to accept the promissory note. AuburnBank also alleged that on the same day the promissory note and the guarantee were executed, Danny conveyed the real property fist-ed on the financial statement to Denise, who was then his wife, and that the conveyance of the real property was made without an adequate consideration and was done for the purpose of defrauding Au-burnBank. AuburnBank alleged that the promissory note was in default, and it sought a judgment for the unpaid amount due. AuburnBank further sought to have the conveyance of real property from Danny to Denise set aside as fraudulent and to have a lien placed on that property in favor of AuburnBank.[2]
After conducting an ore tenus proceeding, the trial court entered a judgment in favor of AuburnBank, on the promissory note, awarding $143,711.37, including interest; the judgment also divested Denise of title to the real property Danny had conveyed to her and vested title to that property in Danny; and it declared a $143,711.37, lien on the property in favor of AuburnBank. Denise’s postjudgment motion was denied by operation of law; she appealed. This case was transferred to this court by the supreme court, pursuant to § 12-2-7, Ala.Code 1975.
On November 26, 1986, Denise’s parents, Preston and Linda Porter, conveyed three acres of land as a gift to Denise and Danny. Denise and Danny purchased a mobile home and placed it on the property. Denise testified that the mobile home was paid for with money she received from a lawsuit arising from an automobile accident she had been involved in.
Denise testified that she purchased 3.9 acres of land located at 1150 Lee Road from Freddie Hinson in November 1991, using funds she had accumulated in her savings account. The warranty deed conveyed the property to both Denise and Danny. In May 1992 Denise and Danny sold the three acres of land that was given to them by her parents, along with the mobile home that was located on it, for $46,087.16. Denise and Danny contracted with AAA Affordable Homes, Inc., in June 1992, to construct a house on the property located at 1150 Lee Road for $75,000. Denise testified that the construction of the house at 1150 Lee Road was funded with the proceeds derived from the sale of the three acres of land and the mobile home and with funds from her savings account. Denise testified that there was no mortgage on this house and land when *299 she and Danny moved into it. She stated that Danny had little or no income at that time and that he contributed nothing to the purchase of the land or to the construction of the house at 1150 Lee Road.
Marital problems arose between Denise and Danny and they were separated on several occasions between 1996 and 1998. While Denise and Danny were separated in December 1996, Danny purchased 4.5[3] acres of land and a mobile home located at 345 Lee Road. Danny obtained the purchase price for the property by executing a promissory note for $47,000 to Farmers National Bank of Opelika. The note was renewed on March 6, 1997, and it was to mature on June 4, 1997. Denise testified that she and Danny reconciled in March or April 1997, and that she learned at that time that Danny had purchased the property at 345 Lee Road and had given the $47,000 note to Farmers National Bank.
Denise testified that because Danny did not have the financial ability to pay the note to Farmers National Bank, and because the property at 345 Lee Road had more “road frontage” than the other Lee Road property, she decided to sell the house and property located at 1150 Lee Road and purchase the property located at 345 Lee Road. A settlement statement relating to the sale of the property located at 1150 Lee Road indicates that the property was sold for $150,000 on May 6, 1997, and that Denise and Danny received $147,106.10 from the sale after certain deductions were made. Denise testified that she used $48,147.01 of those funds to pay the balance on the note owed on the property and mobile home located at 345 Lee Road and that she deposited the balance of the funds into her personal checking account at Farmers National Bank. Account records from Farmers National Bank indicate that $99,314.18 was deposited into Denise’s checking account on May 14, 1997. Danny’s name does not appear on that account.
Denise testified that she and Danny agreed that in exchange for her paying the note Danny owed on the property located at 345 Lee Road, and for her building a house on the property, Danny would convey his interest in that property to her. Denise stated that she used the balance of the funds from the sale of the property located at 1150 Lee Road, which she said had been deposited into her personal checking account, to build a new house on the property located at 345 Lee Road. Denise testified that there was no mortgage on this property. The record contains copies of canceled checks drawn on Denise’s account from June 1997 to September 1997, for items and services related to the construction of the house.
Charles Edward Smith, Jr., a former lending officer at Farmers National Bank of Opelika, testified that Danny borrowed $30,000 in September and October 1997 for the stated purpose of completing construction on a home. Denise denied that any of these funds borrowed by Danny were used to complete construction on the house located on the property at 345 Lee Road.
Subsequently, Denise decided to convey one acre of the property located at 345 Lee Road to her daughter. Denise testified that she discovered at that time that the property had not been deeded to her, as she said she and Danny had agreed it would be. She testified that she “worried” Danny for “quite some time” about conveying the property to her. A letter from Denise and Danny’s attorney contained in *300 the record indicates that Danny contacted him on January 9, 1998, about conveying the property at 345 Lee Road to Denise. The letter indicates that the deed conveying Danny’s interest in the property to Denise was prepared and signed by Danny on February 12, 1998. The stated consideration in the deed for the conveyance was “Ten Dollars ($10.00) and other good and valuable consideration.”
Hugh D. Wall, Jr., a lending officer at AuburnBank, lent Teoples money to fund a “floor-plan agreement” in February 1997. On October 30, 1997, Danny completed a personal financial statement and presented it to AuburnBank. Danny represented in the financial statement that he owned the 4.5 acres and the 2,360 square-foot home located at 345 Lee Road and that it was valued at $248,000. On February 12,1998, the same day Danny conveyed his interest in the property at 345 Lee Road to Denise, he executed a promissory note and a personal guarantee to AuburnBank, in order to get a renewal of the loan to Teoples in the amount of $150,000. Wall testified that in renewing the loan he relied on the financial statement indicating that Danny owned the property located at 345 Lee Road and that Danny did not inform him that he had conveyed his interest in the property to Denise. Wall stated that the promissory note was in default and that the debt owed was $143,711.37.
Denise and Danny were divorced in July 1998. The court incorporated an agreement of the parties into the judgment of divorce; the terms of that judgment awarded the property located at 345 Lee Road to Denise free and clear of any claims of Danny.
Our supreme court has stated:
“The three elements necessary before a conveyance will be declared fraudulent are: 1) a creditor to be defrauded; 2) a debtor intending to defraud; and 3) a conveyance of property out of which the creditor could have realized his claim or some portion thereof. Without regard to actual intent, the law will find a constructive fraud when a grantor, indebted at the time, conveys property without receiving valuable consideration. Once constructive fraud is alleged in a family transaction, as it has been here, the grantee has the burden of proving the bona fide character of the underlying transaction.”
Champion v. Locklear, 523 So.2d 336, 338 (Ala.1988) (citations omitted). In Champion, the wife purchased a piece of property, taking title jointly with her husband. The wife made a down payment of $10,025, which she had obtained from her mother; assumed the mortgage of the prior owner, and made the monthly mortgage payments. The husband suffered from Parkinson’s disease and had not worked full-time since 1971. With money she earned from her employment, the wife supported herself and the husband, paid his medical bills, and made several improvements to the property. In November 1983, the husband conveyed his interest in the property to the wife, for a consideration of $10. In January 1985, Cathy Locklear obtained a $14,000 judgment against the husband for damage to her swimming pool that had resulted from some contract répair work done on the pool in 1982. Locklear sued to have the conveyance from the husband to the wife set aside as fraudulent. The trial court entered an order setting the conveyance aside, finding that a constructive fraud had been perpetrated upon the creditor. Id.
Our supreme court stated the following with regard to the burden of proof that the grantee/spouse must meet in order to prove the bona fide character of the underlying transaction:
*301 “ ‘In order to meet the requisite burden of proof, the grantee/spouse is not limited to showing that the consideration that actually passed was sufficient, but may also present evidence of circumstances, salaries, financial contributions from other sources and relevant matters tending to prove that the ownership which was transferred was supported by adequate consideration. The grantee/spouse may present evidence tending to show that the original interest owned by the husband was a mere convenience and that the grantee/spouse initially purchased the property with funds from her own separate estate.’ ”
Champion, 528 So.2d at 338, quoting Southern Slag Prods. Co. v. Thomas, 413 So.2d 1073, 1076 (Ala.1982). In reversing the judgment of the trial court, our supreme court noted that the record was replete with canceled checks and receipts that demonstrated the extent of the wife’s financial contributions to the purchase of the property and proved the bona fide character of the conveyance from the husband to the wife. Champion, supra.
We are ever mindful of the ore tenus rule of review; however, where the trial court’s judgment is so unsupported by the evidence in the record so as to be plainly and palpably wrong, this court must reverse that judgment. Smith v. Irwin, 688 So.2d 860 (Ala.Civ.App.1997).
The evidence suggests that Denise and Danny purchased land located at 1150 Lee Road and constructed a house on that land. Denise testified that the land was purchased with, and construction of the house was financed through the use of, funds acquired from the sale of some land given to her and Danny by her parents, from the sale of a mobile home she had purchased with funds she had received from a personal-injury lawsuit, and from funds she had accumulated in her savings account. AuburnBank does not in its brief dispute the accuracy of this testimony.
A settlement statement contained in the record indicates that the property located at 1150 Lee Road was sold and that Denise and Danny received $147,106.10 from the sale. Denise testified that she used $48,147.01 of these funds to satisfy a debt owed by Danny that was secured by the 4.5 acres of land and a mobile home located at 345 Lee Road, and that she deposited the balance of those funds into her personal checking account. AuburnBank does not in its brief dispute this testimony. Account records indicate that she deposited $99,314.18 into her checking account and that Danny’s name does not appear on the account. Denise testified that those funds were used to construct the house located at 345 Lee Road. This testimony is supported by canceled cheeks contained in the record.
After carefully reviewing the record in this case, we conclude that Denise presented sufficient evidence to require a finding that she paid a valuable consideration for the property located at 345 Lee Road, and, thereby, she established the bona fide character of the conveyance of that property from Danny to Denise. Accordingly, the judgment of the trial court is reversed, and the cause is remanded for an order or further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN and MURDOCK, JJ., concur.
CRAWLEY and THOMPSON, JJ., concur in the result.

. Danny and his business partner, Gene Tucker, were the principals of Teoples, Inc. d/b/a D & G Auto Sales. D & G Auto Sales was in the business of selling used automobiles.

. Teoples and Danny did not answer the complaint. Danny’s whereabouts are unknown.

. Both parties state in their brief that the parcel located at 345 Lee Road contains 5.5 acres; however, a financial statement contained in the record indicates that the parcel located at 345 Lee Road contains 4.5 acres.